**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| IN RE TOYOTA MOTOR CORP. HYBRID BRAKE MARKETING, SALES, PRACTICES and PRODUCTS LIABILITY LITIGATION | Case No.: 8:10-ml-02172-CJC(RNBx) <br><br> ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION OF THE NASH AND RAMIREZ PLAINTIFFS' CLAIMS |

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Marciano and Miriam Ramirez, Amelia Nash, Lisa Creighton, Leora Kahn and Nathan Kravis, and Brooke and Timothy Whitlock brought this putative class action against Defendants Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. (collectively, "Toyota" or "Defendants") on behalf of themselves and others similarly situated who purchased or leased certain 2004 to 2010 model Toyota or Lexus hybrid

vehicles that were not subject to recall (collectively, "Toyota Hybrid Class Vehicles").[1] Plaintiffs allege that the anti-lock braking system ("ABS") in the Toyota Hybrid Class Vehicles are defective in that the system extends the stopping time and distance, resulting in numerous vehicle accidents and creating unreasonable safety risks.  In the operative First Amended Complaint, Plaintiffs assert fourteen causes of action under the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; breach of implied warranty under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*, as well as under Maryland and other states' laws; unjust enrichment under California law; and claims for unjust enrichment under Utah, Georgia, and other states' laws.  (Dkt. No. 75.)  Plaintiffs request, *inter alia*, a common fund for the repairs to the braking system for the Toyota Hybrid Vehicles, damages, and restitution in connection with their claims.  (FAC, Prayer.)

Toyota now moves to compel arbitration of the claims of Plaintiffs Amelia Nash and Marciano and Miriam Ramirez pursuant to an arbitration provision contained in the purchase agreements executed by them and two of Toyota's authorized dealerships.  The Court DENIES Toyota's motion.  Toyota has no standing to compel arbitration because it is not a signatory or party to the arbitration agreements, and even if Toyota had any right to arbitrate any of Plaintiffs' claims, Toyota waived that right by actively litigating and defending against those claims in federal court for almost two years.

---

[1] Specifically, the Toyota Hybrid Class Vehicles consist of model year 2004 to 2009 Prius vehicles, the model year 2006 to 2010 Toyota Highlander Hybrid vehicles, the model year 2006 through 2008 Lexus RX 400h vehicles, and model year 2010 Lexus RX 450h vehicles.  (First Amended Complaint ["FAC"] ¶¶ 4–8.)  On February 8, 2010, Toyota announced that it would conduct a voluntary recall for the 2010 model year Prius and the 2010 Lexus HS 250h to update the ABS software in response to consumer complaints.  (*Id.* ¶ 151.)

## A.  Purchase Agreements

On June 8, 2005, Plaintiff Nash entered into a Retail Installment Sale Contract with Melody Toyota, located at 750 El Camino Real in San Bruno, California, to purchase a 2006 Toyota Highlander Hybrid.  (Mallow Decl. in Supp. Defs.' Mot. to Compel ["Mallow Decl."], Exh. A  ["Nash Agreement"].)  On February 12, 2007, the Ramirez Plaintiffs entered into a Retail Installment Sale Contract with Toyota of Alameda, located at 2424 Clement Avenue in Alameda, California, to purchase a 2007 Toyota Prius. (Mallow Decl., Exh. B ["Ramirez Agreement"].)  The Nash Agreement and Ramirez Agreement (collectively, "the Purchase Agreements") were produced by Plaintiffs in discovery and redacted copies were submitted as exhibits.  (Mallow Decl. ¶¶ 2–3.)  The Purchase Agreements set forth the terms of the sale of Plaintiffs' vehicles, including information regarding the purchase price, financing, insurance, warranties disclaimed by the Seller, the warranties of buyer, and rescission rights.  (Nash Agrmt.; Ramirez Agrmt.) They also provide that "[f]ederal law and California law apply to th[e] contract." (Mallow Decl., Exh. A, at 4; *id.*, Exh. B, at 4.)  The Purchase Agreements further include an arbitration clause with the following provisions:

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. . . .

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successor or assigns, which arise out of or relate to your credit

application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action.

(Nash Agrmt., at 6; Ramirez Agrmt., at 6.)  The Purchase Agreements were signed by the Nash and Ramirez Plaintiffs and representatives of Toyota dealerships.  (Nash Agrmt., at 3; Ramirez Agrmt., at 3.)  Toyota was not a signatory to either agreement.

### B.  Procedural History

On February 8, 2010, Plaintiffs filed their initial Complaint.  (Dkt. No. 1.)  On September 27, 2010, Plaintiffs filed their First Amended Complaint, which, among other things, included additional plaintiffs.  (Dkt. No. 75.)  On July 26, 2010, the parties filed their first Joint Case Management Stipulation, which the Court adopted.  (Dkt. No. 70 ["CMC No. 1"]; Ct. Order, Dkt. No. 71, July 28, 2010.)  In the first CMC stipulation, Toyota asserted broad defenses that included, *inter alia*, that Plaintiffs have not and cannot identify any defect with the ABS in the non-recall Toyota Hybrid Class Vehicles; that even if an alleged defect existed, the alleged defect is a drivability or feel good issue that does not render the vehicles unsafe; and that the unique circumstances of a particular driver foreclose a class action.  (CMC No. 1, at 3.)  On October 28, 2010, Toyota moved to dismiss all the claims in the FAC.  (Dkt. No. 3.)[2]  On January 20, 2011, the Court granted Toyota's motion to dismiss with respect to the Whitlock Plaintiffs' claims under the CLRA and dismissed all the Plaintiffs' claims for unjust enrichment under California law.  (Ct. Order, Dkt. No. 27, Jan. 20, 2011.)[3]  The Court denied the remainder of

---

[2] Toyota's motion to dismiss the FAC is docketed under Case No. 8:10-ml-02172-CJC(RNBx).

[3] The January 20, 2011 Order is docketed under Case No. 8:10-ml-02172-CJC(RNBx).

Toyota's motion to dismiss.  (*Id.*)  On February 23, 2011, Toyota answered the FAC, asserting arbitration as its tenth affirmative to all or some of the claims in the FAC, including Plaintiffs' putative class action claims.  (Dkt. No. 44 [Answer to FAC] ¶ 408.)[4]

On January 27, 2011, the parties filed a second Joint Case Management Stipulation, detailing the nature, scope, and deadlines related to a two-phase discovery, consisting of a class discovery and merits discovery phase.  (Dkt. No. 82.)  On January 28, 2011, the parties participated in their first discovery conference before Magistrate Judge Robert N. Block.  (Tufaro Decl. in Supp. Pls.' Opp. ["Tufaro Decl."] ¶ 5.)  The parties appeared before Judge Block for seven subsequent discovery conferences in 2011 on March 8 and 10; April 6, 7, and 26; June 27; and October 14.  (*Id.* ¶ 7.)

In the midst of the parties' discovery conferences before Judge Block, on April 27, 2011, the Supreme Court issued *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011), which interpreted class actions waivers in certain arbitration agreements to be enforceable.  In doing so, the Supreme Court overturned *Discovery Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005), holding class action arbitration waivers in contracts of adhesion involving disputes over small amounts of money to be unconscionable, on the basis that it was inconsistent with the purpose of the Federal Arbitration Act ("FAA").  *Concepcion*, 131 S. Ct. at 1748, 1750–51.  The Supreme Court reasoned that requiring class arbitration is inconsistent with the FAA because (1) class arbitration sacrifices the informality characteristic of arbitral proceedings, thereby rending arbitration slower and more costly; (2) class arbitration requires procedural formality to the extent not envisioned by Congress when it passed the FAA, and (3) class arbitration greatly increases risks to defendants in high-stakes class proceedings because errors would not be subject to appellate review.  *Id.* at 1751–52.

---

[4] Toyota's answer to the FAC is docketed under Case No. 8:10-ml-02172-CJC(RNBx).

Between July and October 2011, the parties continued to engage in extensive meet and confer discussions and mediation discussions before Judge Tevrizian (Ret.), during which the parties considered (i) possible resolution of the case and (ii) alternatives to Toyota's production of the ABS source code information for Plaintiffs' anticipated motion for class certification.  (*Id.* ¶ 8.)  On June 24, 2011, Toyota served amended notices of deposition on the Nash and Ramirez Plaintiffs.  (*Id.* ¶ 10.)  Toyota deposed Plaintiff Nash on July 6, 2011 for approximately seven hours.  (*Id.* ¶ 11.)  On July 8, 2011, the parties submitted a third Joint Case Management Stipulation that revised the terms and schedule of discovery, which the Court adopted on July 15, 2011.  (Dkt. No. 121; Ct. Order, Dkt. No. 122, July 15, 2011.)

On October 14, 2011, Judge Block issued a discovery order setting deadlines for Toyota's production of specifications for the Toyota Highlander and Lexus Hybrid; setting the deadline for the production of source code information for January 23, 2011; setting alternative venues for Toyota's production of source code information; and requiring Toyota to bear all costs associated with implementing the security measures it desired if Toyota elected not to produce the source code information at an existing secured facility in Japan, with the exception of those costs Plaintiffs previously agreed to share.  (Ct. Order, Dkt. No. 136, Oct. 14, 2011.)  On October 18, 2011, the parties filed under seal a proposed protective order governing the exchange and handling of source code and source code related material, (Dkt. No. 141), which the Court approved on October 24, 2011.  (Dkt. No. 148.)  On November 1, 2011, pursuant to  28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(a), Toyota moved for reconsideration of Block's October 14, 2011 Order requiring Toyota to bear costs for implementing security measures related to its production of the ABS's source code and source related information.  (Dkt. No. 154.)  On December 2, 2011, the Court denied the motion because it was procedurally defective and because the Judge's Block's Order was not clearly erroneous or contrary to law.  (Ct. Order, Dkt. No. 169, Dec. 2, 2011.)

## C.   Motion to Compel Arbitration

On October 10, 2011, Toyota moved to compel arbitration of Plaintiffs' claims. (Dkt. No. 132.)  Plaintiffs filed their opposition on November 14, 2011.  (Dkt. No. 159.) Toyota submitted reply papers on November 21, 2011.  (Dkt. No. 165.)  Counsel for the parties presented oral arguments on December 5, 2011.  (Dkt. No. 172.)  Toyota argues that it is now asserting its right to compel Plaintiffs to arbitrate their individual claims under the Purchase Agreements following the April 2011 Supreme Court decision in *AT&T Mobility LLC v. Concepcion*.  (Defs.' Mem. in Supp. Mot. to Compel, at 1, 20–22.)  Although Toyota acknowledges that it is not a signatory to the Purchase Agreements, Toyota nevertheless argues that it has the right to compel Plaintiffs to arbitrate their claims based on the principle of equitable estoppel, as Plaintiffs' claims presume the existence of and therefore arise out of the Purchase Agreements and because Plaintiffs raise allegations of substantially interdependent and concerted misconduct by Toyota and its authorized dealers.  (*Id.* at 9–19.)  Toyota further argues that it did not waive arbitration because before *Concepcion*, class action waivers — as contained in the arbitration provisions under the Purchase Agreements — were deemed unconscionable. (*Id.* at 20–22.)  Toyota argues that it has asserted its right to arbitration at the first available opportunity after *Concepcion* and thus it has not acted inconsistently with a known existing right to arbitration.  (*Id.* at 22–23.)

Plaintiffs argue that Toyota's motion to compel should be denied because the language of the arbitration provision in the Purchase Agreements is both procedurally and substantively unconscionable and therefore unenforceable.  (Pls.' Opp. to Mot. to Compel, at 5–15.)  Plaintiffs further argue that, as a nonsignatory to the Purchase Agreements, Toyota does not have a right to enforce the arbitration provision, and the principle of equitable estoppel does not apply because none of the claims in the FAC arise out of or relate to the terms or conditions in the Purchase Agreements.  (*Id.* at 15–

21.)  Finally, Plaintiffs argue that Toyota cannot compel arbitration of their individual claims because Toyota has waived that right, as it knew of any right that it might have had long before *Concepcion*, and even since the Supreme Court issued the decision, Toyota continued to engage in discovery inconsistent with any intention to compel arbitration.  (*Id.* at 21–25.)  Plaintiffs argue that enabling Toyota to compel arbitration at this stage of the proceeding will prejudice them because they have expended considerable time, money, and effort in litigating the action and participating in discovery.  (*Id.* at 24–25.)

## II.  LEGAL STANDARD

### A.  Motion to Compel Arbitration Generally

The Federal Arbitration Act governs the enforceability of arbitration agreements in contracts involving interstate commerce.  *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991).  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *Concepcion*, 131 S. Ct. at 1745; *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (holding that the FAA not only places arbitration agreements on equal footing with other contracts, but also establishes a federal policy in favor of arbitration).

District courts shall stay further proceedings and order arbitration if:  (1) a valid agreement to arbitrate exists, and the (2) the agreement encompasses the dispute at issue.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also* 9 U.S.C. § 2. The first issue of determining the validity of an arbitration agreement is a question of contract interpretation and thus governed by state law.  *Circuit City Stores*, 279 F.3d at 892.  The FAA only "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' "  *AT&T*, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2).  "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA."  *Id.* at 1747.  But "when a doctrine normally thought to be generally applicable, such as duress or . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration," the inquiry becomes more complex.  *Id.* Under California law, courts may refuse to enforce a contract where, at the time of its formation, it was unconscionable, or may limit the application of any unconscionable clause.  Cal. Civ. Code § 1670.5(a).  A finding of unconscionability has both a procedural and substantive component.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  While procedural unconscionability focuses on the element of " 'oppression' or 'surprise' due to unequal bargaining power," substantive unconscionability centers on an " 'overly harsh,' or 'one-sided' results.' "  *Id.*

        The second issue as to the scope of an arbitration agreement is governed by federal substantive law.  *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).  The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Chiron Corp.*, 207 F.3d at 1131 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute

which he has not agreed so to submit." *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

## B.  Nonsignatories to Arbitration Agreement

Generally, the right to compel arbitration derives from a contractual right, and "[t]hat contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *see also Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . ." (citation and quotes omitted)).  However, as an exception to this general rule, a nonparty to an arbitration agreement may compel a signatory to an arbitration agreement to arbitrate claims under certain legal principles governed by federal substantive law, including under the theory of equitable estoppel.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001) ("The FAA creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." (citations and quotes omitted)); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlaguen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (explaining that federal substantive law governs the question of whether a nonsignatory to an arbitration agreement can compel a signatory to arbitration).

A nonsignatory may apply the principle of equitable estoppel to compel arbitration of claims asserted by a party to an arbitration agreement in two types of contexts.  First, "a signatory may be required to arbitrate a claim brought by a nonsignatory because of the close relationship between the entities involved, as well as the relationship of the

alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009) (citations and quotes omitted); *see also Comer*, 436 F.3d at 1101. Second, equitable estoppel applies when the signatory of an arbitration agreement raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006) (citation and quotes omitted); *see also Mundi*, 555 F.3d at 1047 (holding that equitable estoppel did not apply because the plaintiffs' claims were not intertwined with the contract providing for arbitration and because "there were no allegations of collusion or misconduct" between the nonsignatory and signatory). The purpose of equitable estoppel is to "preclude a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi*, 555 F.3d at 1045.

## III. DISCUSSION

### A. Nonsignatories to Arbitration Agreement[5]

Toyota argues that Plaintiffs must arbitrate their claims against Toyota because all of their claims fall within the scope of the broadly-worded arbitration provision. (Defs.'

---

[5] As a threshold matter, Toyota argues that the arbitrator, rather than this Court, should decide the issue of whether a nonsignatory such as Toyota may compel Plaintiffs to arbitrate their claims because the Purchase Agreements expressly provide that the arbitrator should decide issues of interpretation, scope, and applicability of the arbitration provision. (Defs.' Mem. in Supp. Mot. to Compel, at 7.) The Court disagrees. While parties may agree to explicit provisions enabling the arbitrator to decide issues of the applicability and scope of an arbitration agreement, these provisions are part of the agreement and only apply to signatories. Toyota cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether Toyota, as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court. *Britton*, 4 F.3d at 744; *Comedy Club*, 553 F.3d at 1287. None of the cases cited by Toyota in support of its position, (Defs.' Mem. in Supp. Mot. to Compel, at 7–8), counsels otherwise, as they are inapposite to nonsignatories.

Mem. in Supp. Mot. to Compel, at 8–9.)  Toyota ignores the plain and clear wording of the arbitration provision in the Purchase Agreements.  The arbitration provision states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successor or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) *shall, at your or our election*, be resolved by neutral, binding arbitration and not by a court action.

(Nash Agrmt., at 6; Ramirez Agrmt, at 6 (emphasis added).)  Here, the plain language of the provision is clear that the signatories — the Nash and Ramirez Plaintiffs and the Toyota dealerships — may invoke their right to arbitrate any claims arising under the Purchase Agreements.  But the provision does not state that nonsignatory third parties, such as Toyota, may arbitrate claims under the Purchase Agreements.  The Toyota dealerships have never been parties to this action.  Thus, Toyota cannot compel arbitration of Plaintiffs' claims under the arbitration provision in the Purchase Agreements.

Contrary to Toyota's presentation of the issue, the proper question for the Court is not whether Plaintiffs' claims fall within the scope of the Purchase Agreements, but whether the parties here are subject to the arbitration provision contained in the agreements.  On this issue, Toyota contends that the principle of equitable estoppel applies to enable Toyota to move to compel arbitration of Plaintiffs' claims (1) because each of the claims presumes the purchase of a Toyota vehicle and existence of a retail contract and thus arise out of and relate directly to the Purchase Agreements, and (2) because Plaintiffs have raised allegations of substantially interdependent and concerted misconduct by Toyota and its authorized dealerships.  (Defs.' Mem. in Supp. Mot. to Compel, at 10–19.)

### 1. Claims Not Intertwined with the Purchase Agreements

Toyota argues that Plaintiffs' claims for violation of the CLRA, UCL, and breach of the implied warranty of merchantability depend on the purchase of Toyota vehicles and presume the existence of the Purchase Agreements.  (Defs.' Mem. in Supp. Mot. to Compel, at 14– 17.)  Toyota suggests that this somehow shows that the claims "arise out of" or "relate directly to" the terms and conditions in the Purchase Agreements.  (*Id.* at 17.)  Toyota, however, misses the essential element of the test articulated by the Ninth Circuit and other courts of appeal.  Under the theory of equitable estoppel, a nonsignatory may be bound to an arbitration agreement where (i) there is a close relationship between the entities involved and (ii) the claims are intertwined with the underlying contractual obligation.  *Mundi*, 555 F.3d at 1045–46.  At issue here is not whether there is a close relationship between Toyota and its dealerships, but whether Plaintiffs' claims are intertwined with the terms and conditions in the Purchase Agreements.  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement [and] the signatory's claims arise out of and relate directly to the written agreement . . . arbitration is appropriate."  *Hawkins*, 423 F. Supp. 2d at 1050; *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (recognizing that several courts of appeal have applied the principle of equitable estoppel to bind a nonsignatory to an arbitration agreement because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations" (citation and quotes omitted)).

While it is true that Plaintiffs purchased a Toyota vehicle and executed purchase agreements — and the existence of these facts are relevant to the application of the estoppel principle — the core test of estoppel is whether the plaintiffs' claims are

"intertwined" with the contractual obligations contained in the underlying agreement. *See Mundi*, 555 F.3d at 1046 (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d. Cir. 2008) (examining cases in which nonsignatories were permitted to compel a signatory to arbitrate based on estoppel and reasoning that it was "essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration")).  Even in *Agnew v. Honda Motor Co., Ltd.* — the case to which Toyota heavily analogies this action — applies the rule from the Seventh Circuit that equitable estoppel applies if the plaintiff's claims "rely on the terms of her purchase agreement with the dealership," rather than the mere purchase of the vehicles.  No. 1:08-cv-01433, 2009 WL 1813783, *4 (S.D. Ind. May 20, 2009) (granting nonsignatories' motion to compel arbitration of plaintiff's claims where, *inter alia*, plaintiff alleged wrongdoings uniformly against defendants, including against the signatory car dealer, and the nonsignatories' duties arose out of the plaintiff's purchase agreement with the dealer).

Toyota here mistakenly equates the mere purchase of the vehicles and the mere fact that Plaintiffs executed a purchase agreement with the interrelatedness between Plaintiffs' claims and the obligations in the Purchase Agreements.  The extent of the obligations in the Purchase Agreements concern Plaintiffs' financing and insurance obligations.  The Purchase Agreements also include provisions regarding the parties' right to rescission and the Toyota dealerships' disclaimer of warranties, which state that "the Seller will make no warranties, express or implied, on the vehicles, and there will be no implied warranties of merchantability or of fitness for a particular purpose."  (Nash Agrmt, at 4; Ramirez Agrmt, at 4.)  Plaintiffs do not seek to enforce or challenge these terms in the Purchase Agreements or any duty owed by the Toyota dealerships.  The operative document at issue is not the Purchase Agreements, but Toyota's marketing materials containing the purported false representations regarding the safety of its braking system.  Simply put, Plaintiffs' claims do not rely on the content of the Purchase

Agreements for their success.  Nor does Toyota cite to any portion of the Purchase Agreements that are related to Plaintiffs' claims.

Instead, Plaintiffs' claims are premised on allegations that Toyota's braking system is defective, resulting in numerous vehicle accidents and unreasonable safety risk; that Toyota knew about these brake defects; that Toyota had a duty to disclose the existence of this defect but failed to this information; that Plaintiffs would not have purchased their vehicles had they known about the defect; that Toyota promulgating misleading statements and made false representations regarding the safety of its braking system in their marketing materials; and that Toyota affirmatively took steps to conceal the braking defect and prevent Plaintiffs from discovering the existence of the defect.  (FAC, *passim*.) Based on these allegations, Plaintiffs assert individual and class claims against Toyota for violations of the CLRA, the UCL, breach of implied warranty under the Song-Beverly Consumer Warranty Act, and breach of implied warranty of merchantability, among others.  These claims and allegations are independent of any term or condition stated in the Purchase Agreements.  And the resolution of Plaintiffs' claims does not require the examination of any provision in the Purchase Agreements.  In fact, the FAC does not mention the Purchase Agreements at all.

The only claim that may possibly be somehow entangled with the Purchase Agreements is the claim for breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, which provides that every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable.  (FAC ¶¶ 261, 264.)  However, in the FAC, Plaintiffs clearly assert a breach of the manufacturer's implied warranty against Toyota, not against the dealerships that sold the car.  Nor could Plaintiffs bring such a claim against the dealerships under the Purchase Agreements, given the disclaimer that "the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties

of merchantability or of fitness for a particular purpose."  (Nash Agrmt., at 4; Ramirez Agrmt., at 6.)  The Purchase Agreements also state that the seller's disclaimer "does not affect any warranties covering the vehicle that the vehicle *manufacturer* may provide" (*id*. (emphasis added)); thus, explicitly recognizing that Plaintiffs may have an independent claim against the manufacturer — *i.e.*, Toyota — for a breach of implied warranties.  Toyota analogizes to *Agnew*, but in that case the court found that "the claims for breach of express and implied warranties necessarily assume that the warranties were provided as part of the [dealer's] sale" to the plaintiff.  2009 WL 1813783, at *4.  In contrast, the breach of implied warranty claim asserted in the FAC do not rely on the terms in the Purchase Agreements; in fact, the Purchase Agreements expressly distinguish a warranty claim against Toyota from a claim against the dealerships.

### 2.  Not Substantially Interdependent and Concerted Misconduct

Under the second prong of the equitable estoppel test, the estoppel principle may also apply to permit a nonsignatory to enforce an arbitration agreement against a signatory where the signatory alleges "substantially interdependent and concerted misconduct," *Hawkins*, 423 F. Supp. 2d at 1050, or "collusion" between the opposing nonsignatory and a party to the arbitration agreement.  *Mundi*, 555 F.3d at 1047.  Toyota argues that test is satisfied because portions of the FAC allege that Toyota and its authorized dealerships were engaged in interdependent and concerted misconduct. (Defs.' Mem. in Supp. Mot. to Compel, at 17–18, citing FAC ¶¶ 17–18, 20, 26–27, 29, 140–45, 158–63.)  Toyota's argument is simply unsupported by the FAC.  None of the cited portions of the FAC concern substantially interdependent and concerted misconduct or collusion between Toyota and its dealerships.  In fact, there are only four paragraphs out of 397 alleged in the FAC that even mention the dealerships.  Plaintiffs allege that Plaintiff Ramirez took her Toyota Prius to her authorized Toyota dealership after experiencing braking problems, but that the dealership "denied any knowledge of other

Toyota Prius drivers experiencing or complaining of similar problems with their brakes," and instead requested that she leave her vehicle for inspection.  (FAC ¶¶ 17, 158.) Plaintiffs further allege that Plaintiff Nash experienced braking problems with her 2006 Highlander Hybrid and took the car into Putnam Toyota, an authorized Toyota dealership, but that "Putnam Toyota said there was no problem with the brakes" and that "her April 2008 accident was caused by worn tires and recommended [that she] put new tires on her vehicle."  (FAC ¶¶ 26, 161.)  These allegations do not hint of any collusion between Toyota and its authorized dealerships to conceal information from the Nash and Ramirez Plaintiffs, let alone *substantial* interrelated and concerted misconduct.  Second, as a discussed above, none of the claims in the FAC depend on allegations of an interdependent and concerted misconduct by Toyota and its dealerships; rather, they rely on purported wrongdoings by Toyota.  Consequently, Toyota has no basis under the second prong of the estoppel test to compel arbitration.

## C.  Waiver

Even if the principle of equitable estoppel applied here, Toyota may not compel arbitration of Plaintiffs' claims on the independent ground that it waived its right to do so. Although the FAA favors the enforcement of private arbitration agreements, 9 U.S.C. § 2, the court may refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived such right.  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758–59 (9th Cir. 1988).  "A party seeking to prove waiver of a right to arbitration must demonstrate:  (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Hoffman Const. Co. of Or. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)); *see also Britton*, 916 F.2d at 1412.  Plaintiffs have satisfied all three requirements for waiver.

First, Toyota had knowledge of its right to compel arbitration. Toyota suggests that any attempt to compel arbitration prior to *Concepcion* would have been futile given that class action waivers were generally unenforceable under California law. (Defs.' Mem. in Supp. Mot. to Compel, at 20–22.) However, Toyota's skepticism of its right to arbitrate before *Concepcion* is belied by Toyota's assertion of arbitration as the tenth affirmative defense in its February 23, 2011 answer to the FAC, (Defs.' Answer ¶ 408), two months *before* the Supreme Court issued its decision in *Concepcion* on April 27, 2011.[6] Toyota surely would not have asserted arbitration as an affirmative defense unless it truly believed that it had some legal basis to arbitrate Plaintiffs' claims. In any event, while *Concepcion* may have strengthened Toyota's chances for compelling arbitration, it does not mean that Toyota lacked knowledge of its potential right to pursue arbitration prior to that decision. And contrary to Toyota's suggestion, it does not have a right to reset the clock for arbitration based on changing subsequent law, as no party has a right to unfairly play a game of "wait and see" and not assert its legal rights until and unless the law becomes more favorable to its position.[7]

Second, Toyota has acted inconsistently with any right it might have had to arbitrate Plaintiffs' claims. Toyota argues that it has not acted inconsistently with a known existing right to compel arbitration because "[a]t its first opportunity to do so,

---

[6] Toyota in fact points to its assertion of arbitration as an affirmative defense in its answer to argue that it did not act inconsistently with a known existing right to arbitrate Plaintiffs' claims. (Defs.' Mem. in Supp. Mot. to Compel, at 22.)

[7] The Court further finds that it is uncertain whether *Concepcion* would even apply to this instant action to render the class action waivers in the Purchase Agreements enforceable. *Concepcion* specifically overturned *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005), holding class action arbitration waivers in contracts of adhesion involving disputes over small amounts of money to be unconscionable. *Concepcion*, 131 S. Ct. at 1748, 1750–51. The Supreme Court held that the *Discover Bank* rule, to the extent that it allowed for and mandated the availability of class arbitration, was inconsistent with the FAA, which was designed to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. *Id.* As Plaintiffs point out, however, the instant action does not concern a dispute involving small sums of money, but involve damages related to expensive cars worth thousands of dollars. (Pls.' Opp. to Mot. to Compel, at 23.)

Toyota raised arbitration as an affirmative defense in its Answer, thereby preserving its argument as it awaited the United States Supreme Court's decision in *Concepcion*." (Defs.' Mem. in Supp. Mot. to Compel, at 22.)  As discussed above, however, Toyota's assertion of arbitration as an affirmative defense undercuts its first argument that it did not have a known existing right to arbitration before *Concepcion*.  Furthermore, the record is inconsistent with Toyota's assertion that it acted "[a]t the first opportunity" to move to compel arbitration.

Toyota has vigorously litigated this action for nearly two years, engaged in extensive discovery and meet and confer conferences with Plaintiffs, filed motions with this Court, and negotiated and sought protective orders.  Even after the *Concepcion* opinion was issued in April 2011, Toyota continued to litigate the action for six months and gave no indication to this Court, to Magistrate Judge Block, or to Plaintiffs that it intended to assert any right to arbitrate Plaintiffs' claims.  Specifically, Toyota participated in several discovery conferences before Judge Block after the *Concepcion* decision on April 26, June 27, and October 14, 2011, regarding, among other things, issues connected with source code protection and the protocol of review.  (Tufaro Decl. ¶ 7.)  Instead of moving to compel arbitration promptly after *Concepcion*, Toyota even served amended notices of deposition on the Nash and Ramirez Plaintiffs on June 24, 2011 and deposed Plaintiff Nash on July 6, 2011 for approximately seven hours.  (*Id.* ¶¶ 10–11.)  On July 8, 2011, Toyota also submitted a third Joint Case Management Stipulation detailing the terms and schedule for discovery.  (Dkt. No. 121.)  Toyota recently appeared before Judge Block on October 14, 2011 regarding outstanding discovery issues in the case.  On the same day, Judge Block issued a discovery order, setting, among other things, the deadline for the production of source code information for January 23, 2011.  (Ct. order, Dkt. No. 136, Oct. 14, 2011.)  Most recently, Toyota moved for reconsideration of portions of Judge Block's October 14, 2011 Order.  (Dkt. No. 154.)  In its moving papers, Toyota represented that it has been working diligently to

comply with the January 23, 2012 deadline to produce its ABS source code information. (Defs.' Mem. in Supp. Mot. for Reconsid., at 7–8.)  On October 18, 2011, Toyota also submitted under seal — after several months of negotiations with Plaintiffs and redrafting — a detailed proposed protective order governing the exchange and handling of source code and source code related material.  (Dkt. No. 141.)  The Court adopted the proposed protective order on October 24, 2011.  (Dkt. No. 148.)  The record abundantly shows that Toyota has acted inconsistently with its intention to seek arbitration of Plaintiffs' claims. Toyota's suggestion to the contrary is simply not credible.

Toyota's actions before and after *Concepcion* further distinguish the instant action from the facts in *Fisher v. A.G. Becker Paribas Inc.*, to which Toyota analogizes this case.  (*See* Defs.' Mem. in Supp. Mot. to Compel, at 22–23.)  In *Fisher*, the Ninth Circuit determined that the defendant stock brokerage firm did not act inconsistently with its right to arbitrate claims under an arbitration agreement involving alleged federal securities law violations and common law because it was entitled to rely on the intertwining doctrine and Ninth Circuit precedent holding that arbitration should be denied where common law claims are intertwined with securities law violations.  *Fisher*, 791 F.2d at 693, 694–97.  The Supreme Court later rejected the intertwining doctrine in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), after the parties in *Fisher* had been litigating the action for three and a half years and engaging in extensive discovery. *Id.* at 693, 697.  Toyota argues that, as in *Fisher*, the Supreme Court's decision in *Concepcion* constitutes changing intervening law that shows that it did not act inconsistently with an existing right to arbitrate its claims.  (Defs.' Mem. in Supp. Mot. to Compel, at 22–23.)  However, in *Fisher*, the defendant's actions before and after *Byrd* were consistent with its position.  The defendant in that case, unlike Toyota here, did not assert arbitration as an affirmative defense, thereby suggesting that it had a known right to compel arbitration.  Nor is there any suggestion that the *Fisher* defendant continued to vigorously litigate the action by participating in discovery conferences, deposing

witnesses, negotiating and drafting protective orders, and challenging discovery orders after the intervening Supreme Court decision was issued.[8]

Third, Plaintiffs will suffer prejudice if the Court grants Toyota's belated motion to compel arbitration of their claims.  For nearly two years, Plaintiffs expended substantial resources, time, and effort in litigating this action and being committed to a litigation strategy in federal court.  Plaintiffs undoubtedly would have utilized a different strategy had they known that the case would proceed to arbitration.  *See Hoffman Constr. Co.*, 969 F.2d at 799 (finding that the "the subjection of [plaintiff] to the litigation process . . . the discovery process, the expense of litigation" resulted in apparent prejudice); *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-01936, 2011 U.S. Dist. LEXIS 88781, *9 (C.D. Cal. Aug. 9, 2011) (concluding that defendant waived right to arbitration because, *inter alia*, plaintiff "presumably . . . made different choices concerning the litigation strategy of the case than he would have made if he had known that the case was going to proceed in arbitration").[9]  Nor is it the case that, unlike the plaintiffs in *Fisher*, the Plaintiffs here will be able to utilize discovery for the litigation of nonarbitrable claims in federal court, as Toyota argues that all of Plaintiffs' individual claims should be submitted to arbitration.  *See Fisher*, 791 F.2d at 697 (finding no prejudice resulting from

---

[8] Toyota also relies on *Villegas v. US Bancorp*, No. C 10-1762, 2011 WL 2679610 (N.D. Cal. June 20, 2011) and *Estrella v. Freedom Fin.*, No. C 09-03156, 2011 WL 2633643 (N.D. Cal. July 5, 2011) in support of the proposition that before *Concepcion*, the failure to move to compel arbitration cannot be deemed to be inconsistent with an existing right to compel arbitration under an arbitration agreement containing a class-action waiver clause.  (*See* Defs.' Mem. in Supp. Mot. to Compel, at 23.)  However, there was no question in those cases that *Concepcion* would apply, and there was no indication in either of those cases that the defendants asserted arbitration as an affirmative defense.  Further, there is no indication that the *Villegas* and *Estrella* defendants, even after *Concepcion*, continued to diligently litigate the action, meet and confer regarding discovery, and negotiate protective orders.  Rather, both the defendants in *Villegas* and *Estrella* promptly moved to compel arbitration shortly after *Concepcion* was issued.

[9] Because the Court finds that the principle of equitable estoppel does not apply to permit Toyota to arbitrate claims against Plaintiffs and because Toyota has also waived its right to arbitration, the Court does not reach Plaintiffs' argument that the arbitration provision in the Purchase Agreements are procedurally and substantively unconscionable.

extensive discovery because, *inter alia*, discovery would be available for trial in federal court of the nonarbitrable claim).  Rather, Toyota has specifically benefited from discovery — such as from the deposition of Plaintiff Nash — that it would not have been entitled to in arbitration.  It is simply too late for Toyota now to tell Plaintiffs that it is putting an end to litigation in federal court, switching to another forum, and starting the case over again in arbitration after being unable to dismiss Plaintiffs' claims in large part and now facing a January 2011 deadline to produce the ABS source code information essential to Plaintiffs' claims.

## IV.  CONCLUSION

     For the foregoing reasons, Toyota's motion to compel arbitration of the Nash and Ramirez Plaintiffs' claims is DENIED.

DATED:    December 13, 2011

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE