Michael L. Mallow (SBN 188745)
mmallow@loeb.com
Mark D. Campbell (SBN 180528)
mcampbell@loeb.com
Rachel A. Rappaport (SBN 268836)
rrappaport@loeb.com
Derek K. Ishikawa (SBN 270275)
dishikawa@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendants
TOYOTA MOTOR SALES, U.S.A., INC.
and TOYOTA MOTOR CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TOYOTA MOTOR CORP. HYBRID BRAKE MARKETING, SALES PRACTICES and PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>8:10-CV-00154-CJC-RNB<br>2:10-CV-01154-CJC-RNB<br>8:10-CV-00173-CJC-RNB<br>8:10-CV-01255-CJC-RNB | MDL No. 2172<br><br>Assigned to Hon. Cormac J. Carney<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[Filed concurrently with Compendium of Evidence, Evidentiary Objections to the Declaration of Jeremy Nash; Declarations of Michael L. Mallow, Kenji Ito, Gary Smith, Nathan Dorris and James Walker Jr.]<br><br>Hearing Date: December 3, 2012<br>Time: 1:30 PM<br>Ctrm: 9B |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

OPPOSITION TO CLASS CERTIFICATION MOTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT......................................1

FACTUAL BACKGROUND ........................................................................5

    a.    Toyota Introduces the 2010 Prius......................................5

    b.    Toyota Identifies the ABS Issue........................................6

    c.    Toyota Implements a Software Update to Address the Condition........................................................................7

    d.    Empirical Data Confirms the Issue Is Not a Continuing Issue...........10

ARGUMENT ........................................................................................11

I.    Rigorous Analysis Is Required to Ensure Plaintiffs Satisfy Rule 23............11

II.    The Impact of the Recall on Plaintiffs' Class Claims ..................13

    A.    A CLRA Class Cannot Be Maintained...............................13

        1.    Toyota Identified and Notified Consumers ...........................14

        2.    Toyota Provided A Reasonable Repair ...................................14

        3.    Cessation of Methods, Acts or Practices ...............................16

    B.    Recall Efficacy Is a Predominately Individual Issue .........................17

III.    Plaintiffs' Claims Do Not Satisfy the Commonality Requirement..............20

IV.    Individual Questions Predominate Over Common Questions......................21

    A.    Plaintiffs' Advertising Related Claims Raise Individual Issues.........21

    B.    The Materiality of the ABS Issue Will Vary ....................................25

        1.    The Materiality of the Inconsistent Brake Feel Is Subjective ...............25

        2.    The Possibility of Extended Stopping Distance is not Material Because It Is Dependent on Atypical Driving Behavior .................26

    C.    The Materiality of an Alleged Omission Related to the ABS Issue Is Not Subject to Common Proof .............................27

    D.    Binding Arbitration Provisions Create Individual Issues...................28

    E.    Injury and Damages Are Not Subject to Common Proof..................29

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

i

OPPOSITION TO CLASS CERTIFICATION MOTION

**Table of Contents continued**

**Page**

V.      Plaintiffs Are Neither Typical Nor Adequate Class Representatives ..........32

VI.     A Class Action Is Not the Superior Method for Adjudicating this Dispute ...................................................................................................35

        A.     Plaintiffs Have Offered the Court No Guidance on Manageability ..................................................................................35

        B.     Relief Is Available Through Other Channels ....................................38

CONCLUSION ...................................................................................................39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

ii

OPPOSITION TO CLASS CERTIFICATION MOTION

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alban v. BMW of N. Am.*,
    No. 09-5398, 2011 WL 900114 (DRD)
    (D. N.J. Mar. 15, 2011)..................................................................37

*Am. Honda Motor Co., v. Sup. Ct.*,
    199 Cal. App. 4th 1367 (2011).......................................................37

*Amchen Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................21

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011)..........................................................20

*Arabian v. Sony Elecs., Inc*,
    No. 05-CV-1741 (WQH), 2007 WL 627977
    (S.D. Cal. Feb. 22, 2007) ..............................................................16

*Behrend v. Comcast Corp.*,
    264 F.R.D. 150 (E.D. Pa. 2010), *aff'd*, 655 F.3d 182
    (3d Cir. 2011), *cert. granted in part*, No. 11-864,
    2012 WL 113090 (U.S. June 25, 2012).........................................12

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002)........................................................39

*Casida v. Sears Holdings Corp*.,
    2012 WL 3260423 ........................................................................12

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998) ........................................................38

*Cholakyan v. Mercedes-Benz USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) ...................................................37

*Coughlin v. Sears Holdings Corp.*,
    No. SACV 08-0015 (CJC) 2010 WL 4403089
    (C.D. Cal. Oct. 26, 2010) ..............................................................33

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

iii

OPPOSITION TO CLASS CERTIFICATION
MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

*Daigle v. Ford Motor Co.*,
   Civ. No. 09-3214, 2012 WL 3113854
   (D. Minn. July 31, 2012)................................................................20

*Debbs v. Chrysler Corp.*,
   810 A.2d 137 (Pa. Super. Ct. 2002) ...............................................28

*Edwards v. Ford Motor Co.*,
   No. 11-1058 (MMA), 2012 WL 2866424
   (S.D. Cal. June 12, 2012)................................................................28

*Eisen v. Carlisle and Jaquelin*,
   417 U.S. 156 (1974).........................................................................35

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)....................................... 12, 21, 30, 32

*Erlandson v. Ford Motor Co.*,
   No. 08-CV-1137, 2009 WL 3672898 (BR)
   (D. Or. Oct. 30, 2009) .....................................................................37

*Ewert v. eBay, Inc.*,
   Nos. C-07-02198 (RMW), 2010 WL 4269259 ...............................34

*Fine v. ConAgra Foods, Inc.*,
   CV-NO. 10-01848 (SJO), 2010 WL 3632469
   (C.D. Cal. Aug. 26, 2010) ...............................................................24

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982).........................................................................35

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)...........................................................34

*Harnden v. Ford Motor Co.*,
   408 F. Supp. 2d 315 (E.D. Mich. 2005) ..........................................19

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3rd Cir. 2009) ............................................. 12, 30, 31

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

iv

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3
*Jimenez v. Domino's Pizza, Inc.*,
4
   238 F.R.D. 241 (C.D. Cal. 2006) ...................................................................29

5
*Johnson v. Gen. Mills, Inc.*,
   276 F.R.D. 519 (C.D. Cal. 2011) ..................................................................25
6

7
*Johnson v. Harley-Davidson Motor Co. Grp.*,
   No. 10-CV-02443 (JAM), 2012 WL 1898938
8
   (E.D. Cal. May 23, 2012)...............................................................................38

9
*Martinez v. Welk Grp., Inc.*,
10
   No. 09cv2883 (AJB), 2012 WL 2888536
   (S.D. Cal. July 13, 2012)...............................................................................25
11

12
*Match v. Pet Food Express, LTD*,
   No. RG03127285, 2005 WL 5301555
13
   (Cal. Super Ct. Jan. 28, 2005) ......................................................................16

14
*Mazza v. American Honda Motor Co.*,
15
   666 F.3d 581 (9th Cir. 2012)..................................................................passim

16
*Muehlbauer v. General Motors Corp.*,
17
   No. 05 C 2676, 2009 WL 874511 (N.D. Ill. Mar. 31, 2009)............................19

18
*Oshana v. Coca-Cola Bottling Co.*,
19
   225 F.R.D. 575 (N.D. Ill. 2005) *aff'd,* 472 F.3d 506
   (7th Cir. 2006) ...............................................................................................24

20
*Pablo v. ServiceMaster Global Holdings Inc.*,
21
   No. C08-3894 (S), 2011 WL 3476473
22
   (N.D. Cal. Aug. 9, 2011)................................................................................29

23
*Pfizer Inc. v. Sup. Ct.*,
   182 Cal. App. 4th 622 (2010).........................................................................24
24

25
*Rowden v. Pac. Parking Sys., Inc.*,
   No. 11-01190 (CJC), 2012 WL 2552694
26
   (C.D. Cal. July 2, 2012) ................................................................................39

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

v

OPPOSITION TO CLASS CERTIFICATION
MOTION

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3
*Sanchez v. Wal Mart Stores, Inc.*,
4
    No. 2:06-CV-02573 (JAM), 2009 WL 1514435
    (E.D. Cal. May 28, 2009) ..................................................................................29

5

6
*Spencer v. Beavex, Inc.*,
    No. 05-CV-1501 (WQH), 2006 WL 6500597
7
    (S.D. Cal. Dec. 15, 2006) .................................................................................19

8
*Stearns v. Select Comfort Retail Corp.*,
9
    No. 08-2746 (JF), 2009 WL 1635931
    (N.D. Cal. June 5, 2009) ...................................................................................19

10

11
*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ....................................................................36

12

13
*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)............................................................................36

14

15
*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................passim

16

17
*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ....................................................................28

18
*Wiener v. Dannon Co.*,
19
    255 F.R.D. 658 (C.D. Cal. 2009) ....................................................................35

20
*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)..........................................................................23

21

22
*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
    681 F.3d 1208 (10th Cir. 2012)...........................................................2, 16, 17

23

24
*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011)..........................................................25

25

26
*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)...........................................17, 35, 36

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

vi

OPPOSITION TO CLASS CERTIFICATION
MOTION

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

49 U.S.C.A. § 30118 (d) (2000) ............................................................8

Cal. Civ. Code § 1761(d) ...........................................................33, 34

Cal. Civ. Code § 1782(c) .......................................................2, 13, 16

Cal. Civ. Code § 1793.2(d) ....................................................39

Cal. Civ. Code § 1794(d) .......................................................39

Cal. Civ. Code § 1795.90........................................................37

Tex. Occ. Code § 2301.601 *et seq.*.........................................39

**OTHER AUTHORITIES**

43 Tex. Admin. Code § 215.201, *et seq.* ................................39

Fed. R. Civ. P. 23.............................................................passim

Fed. R. Civ. P. 23(a) ..........................................................11

Fed. R. Civ. P. 23(b)(3)...................................................11, 21

Fed. R. Civ. P. 23(c)(1)(B)....................................................36

Fed. R. Civ. P. 30(b)(6)........................................................9

Fed. R. Evid. 407 ...............................................................36

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

OPPOSITION TO CLASS CERTIFICATION MOTION

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This case and Plaintiffs' motion for class certification turn on Toyota's hybrid brake recall campaign which was one of the most successful ever. From initial confirmation that an actual customer concern existed to implementation of the recall remedy in the field, a brief four months elapsed. This was possible because Toyota had the countermeasure ready to go when the recall was announced and media attention was high. But instead of being lauded for its swift and decisive action that provided a complete remedy for all vehicles, Toyota has had to defend a misdirected class action based on little more than Plaintiffs' unsubstantiated lay assertion that the recall did not work in "some" putative class vehicles.

Plaintiffs attempt to minimize the significance of the recall in their certification motion, but the efficacy of Toyota's recall is a class certification dispositive issue. If the recall worked, Plaintiffs are precluded from maintaining a class action for damages under California's Consumer's Legal Remedies Act. Even if it worked only as to "some," as Plaintiffs suggest, then those putative class members will have suffered no injury or harm and will have no claims because they will have received the benefit of their bargain. This very issue was expressly reserved by this Court for decision on class certification:

> Toyota further argues that its voluntary recall bars Plaintiffs' request to certify a CLRA class under Section 1782(c) of the California Civil Code … Section 1782(c) prohibits any action for damages in a consumer class action where "[t]the correction, repair, replacement, or other remedy requested by the consumer has been, or, in a reasonable time, shall be, given." … But, as explained above, Plaintiffs fundamentally contest the issue of whether the recall cured the braking defect. Further, *to the extent that Toyota's recall invokes issues of whether the putative class may be certified for a class CLRA claim, the Court reserves the resolution of those issues for a motion for class certification.*

Compendium of Evidence ("COE") Ex. 15 at  9 (emphasis added).[1]

---

[1] All Exhibits are attached to the accompanying Compendium of Evidence.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

1

OPPOSITION TO CLASS CERTIFICATION
MOTION

So now, after having eighteen months to obtain class discovery, Plaintiffs' only "evidence" suggesting that the recall did not work is the anecdotal testimony of plaintiff Jessica Kramer; a handful of unattributed and/or inadmissible internet blogs and online customer complaints, the most recent of which is from approximately two years ago; and out-of-context statements from a few Toyota documents.[2]  In contrast, Toyota's showing that the recall worked includes Toyota engineering and testing documents; testimony from Kenji Ito, the General Manager of the department that developed the ABS system for the 2010 Prius and HS 250h and who was also involved in developing the software update; the expert reports, sworn testimony, and verification testing by Toyota's automotive engineering expert, James Walker; empirical data exhibiting a precipitous drop in brake-related complaints following the recall; and the sworn testimony of plaintiff Michael Choi.

As a matter of law, Toyota's showing that the recall worked prevents certification of Plaintiffs' CLRA class, both as to damages under Section 1782(c) of the California Code of Civil Procedure and for injunctive relief pursuant to *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 211 (10th Cir. 2012) (finding that a voluntary recall rendered claims for injunctive relief moot).

But the impact of the recall on certification is not limited to Plaintiffs' CLRA claims.  A successful recall precludes relief under all of Plaintiffs' causes of action; and Plaintiffs oft-repeated admission that only "some" members of the putative class may still experience the alleged defect conclusively establishes that the recall is an individual issue that predominates over any possible common issue.  Because there is no method to identify and determine which putative class members believe the recall did not work  from the vast majority who believe it did—other than

---

[2] *See* Appendix 1 to the accompanying Declaration of Michael L. Mallow, which is a chart describing the numerous instances that Plaintiffs either misquote or cite Toyota documents out of context.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

2

OPPOSITION TO CLASS CERTIFICATION
MOTION

specifically asking each of them about their personal experience—Plaintiffs cannot ascertain who is and who is not part of the defined class.

Although dispositive, Toyota's recall is not the only basis upon which this Court can and should deny certification.  Class certification is inappropriate for the following additional reasons:

-       Plaintiffs fail to identify common issues that satisfy the standard set forth in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).   Though Plaintiffs purport to identify ten common issues, all but one are boiler-plate recitations of the *prima facie* elements of their claim.  The only issue that comes close to satisfying *Dukes*—whether the recall worked—is actually an individual issue based on Plaintiffs' admission that only *some* putative class members still feel something.

-       Even if Plaintiffs could identify any common issues, Plaintiffs have not established that such issues predominate over the individual issues that permeate every aspect of this case.  First, Plaintiffs' reliance on Toyota's marketing and advertising of the Prius suffers the same individual predominance fate as the plaintiffs in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  Second, the materiality of the purported defect is either a subjective feel issue or necessarily dependent on atypical driving behavior.  As explained by Dr. Nathan Dorris in his braking study, ordinary drivers—the same drivers Plaintiffs assert comprise the putative class—*do not typically* maintain constant brake pedal force when stopping.  Instead, ordinary drivers typically increase brake pedal force when greater deceleration is desired, rendering the purported defect immaterial to a typical putative class member.  Third, Plaintiffs fail to present any common proof that would establish, on a class-wide basis, injury and damages *caused by* Toyota's purported wrongful acts.  This issue is particularly acute where Toyota's economic expert opined, based on actual data, that the value of the 2010 Prius has not declined; and at least one named plaintiff testified that he was willing to pay *more* for his Prius than he did, COE 16 at 80:4-16, and he has had no interest in selling his

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

3

OPPOSITION TO CLASS CERTIFICATION
MOTION

Prius because he is "happy right now with the brake system."  *Id*. at 80:4-16, 147:5-18.

       -     Plaintiffs fail to establish that they are typical and adequate class representatives.  Plaintiff Del Real never experienced the purported defect at issue in this in case, but rather, she admitted experiencing what was fully described in her Prius owner's manual as properly operating "hill assist."  COE 17 at 93:17-95:140.  Plaintiff Scholten is a Texas resident who purchased his Prius in Texas, and thus, has no claims under California's consumer protection statues.  COE 22.  Plaintiff Kramer has taken a full business tax deduction for her Prius since she has owned it, and therefore, she is not a consumer as defined by the CLRA.  COE 24.  Plaintiff Choi is perhaps the most typical named representative, but he admitted that the ABS issue was not material because pressing harder on the brakes during the pre-recall condition caused his Prius to stop "immediately,"  COE 16 at 103:24-104:8, and he testified that the recall "fixed" his vehicle.  *Id*. at 122:4-16.

       -     Lastly, Plaintiffs fail to show how this Court can manage this class action through trial or how a class action is superior to other methods of adjudicating claims by those few putative class members who believe their Prius continues to suffer from the condition Toyota remedied two years ago.  Plaintiffs have identified no technical expert to testify about a class-wide pre or post-recall defect or the materiality of the purported defect—and Plaintiffs cannot rely on Toyota's recall or recall documentation to satisfy this *prima facie* element of their case.  Similarly, Plaintiffs have identified no expert, have offered no methodology and have suggested no process to establish the content, messaging, pervasiveness or consumer interpretation of Toyota's Prius advertising.   Simply put, a class action is not the superior method for resolving the claims of those **limited** putative class members who believe their Prius has not been remedied by Toyota's recall.  Such customers can pursue individual lemon law claims, which provide the possibility of treble damages and attorneys' fees under California's Song-Beverly Consumer

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

4

OPPOSITION TO CLASS CERTIFICATION
MOTION

1    Warranty Act or pursue their claims with NHTSA, which continues to have

2    jurisdiction over Toyota's recall.

3    For two and half years, Plaintiffs' have had the opportunity to engage in class

4    discovery, accumulate evidence, identify experts, conduct vehicle testing, perform

5    consumer surveys, create regression models and develop a plan for managing this

6    case as a class action through trial.  And after two and half years, Plaintiffs have

7    done almost nothing to satisfy their class certification burden beyond citing to

8    allegations in their complaint, relying on inadmissible hearsay, misstating or taking

9    documents out of context and making endless promises about what their one and

10   only expert might do at some future date.  This is exactly the type of class

11   certification effort that drew heated criticism from the Supreme Court in *Dukes* and

12   should be rejected by this Court.

### FACTUAL BACKGROUND

13

14   **a.      Toyota Introduces the 2010 Prius**

15   Toyota introduced the eagerly anticipated and highly acclaimed third-

16   generation Prius to the United States in late May 2009.[3]  COE 14.  Like nearly all

17   passenger vehicles sold in the United States at that time, the 2010 Prius is equipped

18   with an anti-lock brake system ("ABS").  Declaration of James Walker ("Walker

19   Decl.") ¶ 6.  The Prius ABS works like every other ABS by reducing and

20   modulating the hydraulic pressure to the brakes when tire slippage is detected to

21   ensure the vehicle's wheels do not lock up and cause a loss of steering control.

22   Walker Decl. ¶¶ 7-8.   All vehicles with ABS will experience a momentary

23   reduction in deceleration during ABS activation because hydraulic pressure to the

24

25   [3] Examples of the awards and accolades bestowed on the 2010 Prius include
26   *Kiplinger's Personal Finance Magazine* naming the 2010 Prius the "Best New
     Model," COE 40, and *Intellichoice* naming it the "Best Overall Value."  COE 41.
27   Even after the recall was announced, the 2010 Prius continued to receive awards and
     accolades.  For example, the award-winning television series *MotorWeek* named the
28   Prius "Drivers' Choice Best of the Year," COE 42, and *Parents Magazine* chose the
     2010 Prius as the "Best Hybrid Family Car."  COE 43.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

5

OPPOSITION TO CLASS CERTIFICATION MOTION

brakes is reduced to prevent tire lock-up, thereby enhancing steering control and/or directional stability.  *Id*. at ¶ 9.

**b.      Toyota Identifies the ABS Issue**

In the fall of 2009, as sales increased and the weather turned colder, Toyota began receiving a number of owner comments about an inconsistent brake feel during slow and steady application of brakes on rough or slippery road surfaces when ABS was activated in an effort to maintain tire traction.  Declaration of Kenji Ito ("Ito Decl.") ¶ 4.  Some customers described the event as a momentary loss of braking or a feeling of acceleration.  *Id*.

As a result of these customer comments, Toyota commenced a "root cause analysis" to understand and isolate the customer concerns.  *Id*.  Toyota determined customer complaints were primarily associated with a vehicle characteristic where, in certain limited circumstances, a minor reduction in hydraulic pressure post-ABS activation REDACTED          , coupled with the characteristic decrease in hydraulic pressure found in all vehicles when ABS activates, could result in what some drivers described as momentary inconsistent brake "feel."  COE 29 at 41:2-10, 44:18-45:7; COE 30; Walker Decl. ¶ 11.

If a driver maintained a constant brake stroke (*i.e.*, ignoring the natural impulse typical drivers have to press harder on the brake pedal to stop faster) during this minor reduction in hydraulic pressure REDACTED          , this could lead to a mathematical – though not a material or practical – possibility of slightly extended stopping distance, assuming all other factors that impact stopping distance are ignored.  Ito Decl. ¶ 6; *see also* Walker Decl. ¶¶ 12, 15.

But stopping distance is impacted by countless driver, vehicle and environmental factors, including vehicle speed, tire size, tire tread wear, vehicle weight, vehicle maintenance, individual driver perception/reaction time, driver experience, road conditions, and weather conditions; and these factors overwhelm any minor impact on stopping distance that the ABS phenomenon could create.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

6

OPPOSITION TO CLASS CERTIFICATION
MOTION

1   Walker Decl. ¶¶ 14, 25-28.  According to Mr. Walker, ***the only technical brake***
2   ***system expert in this case***, field testing confirmed that the pre-recall ABS
3   performance of the 2010 Prius did not materially impact real-word stopping distance
4   because pressing even nominally harder on the brake eviscerated any possible
5   impact the ABS issue could have on stopping distance.  *Id.* at ¶ 15, *see also* COE 1
6   at 7-8.  Plaintiffs have not adduced any technical evidence to the contrary.

7           According to Mr. Ito, Mr. Walker and Dr. Dorris, Toyota's human factors
8   expert, pressing harder on the brake pedal to stop is exactly what drivers do.   Ito
9   Decl. ¶ 7; Walker Decl. ¶ 19; Declaration of Nathan T. Dorris ("Dorris Decl.")
10  ¶¶ 15-16.  Dr. Dorris conducted a 75-person study of driver braking behavior, which
11  included ABS activation, and the data collected from the study demonstrates that all
12  drivers modulated the brake pedal to meet their perceived stopping needs and ***none***
13  of the drivers maintained constant pedal force during the over 400 braking events
14  Dr. Dorris studied.  Dorris Decl. ¶¶ 8-18; COE 2 at 24-27; COE 44` (video excerpts
15  from the Driver Braking Study).  Simply put, the uncontroverted evidence
16  demonstrates that the extremely narrow condition that led to the voluntary recall of
17  the 2010 Prius was nullified by a driver pushing nominally harder on the brake
18  pedal; and a typical driver pushes harder on the brake pedal when they want to stop
19  faster.  Ito Decl. ¶ 7; Walker Decl. ¶ 19; Dorris Decl. ¶¶ 15-16.

20       **c.      Toyota Implements a Software Update to Address the Condition**

21          Even though the 2010 Prius satisfied all applicable safety standards relating to
22  braking performance and posed no probable or material safety risk, Toyota deemed
23  the condition sufficiently important from a customer satisfaction perspective—
24  particularly because some drivers *perceived* the sensation as unintended acceleration
25  or a safety issue —that it elected to utilize NHTSA's voluntary safety recall process
26  to effectuate a modification to the ABS system computer logic to minimize the
27  inconsistent brake feel that was disturbing some drivers.  COE 8.  Toyota also used
28  the NHTSA safety recall process because it addressed NHTSA's preliminary

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

7

OPPOSITION TO CLASS CERTIFICATION
MOTION

evaluation that was opened on February 4, 2010,[4] COE 12, and it allowed Toyota to expeditiously reach as many 2010 Prius owners as possible in the wake of criticism that Toyota did not act quickly enough in response to previous customer concerns. COE 27 at 111:23-112:21, 172:7-23.

On February 8, 2010, Toyota announced the voluntary recall to update software in 2010 Prius and HS 250h vehicles that were in the field because "some 2010 model year Prius and HS 250h owners have reported experiencing inconsistent brake feel during slow and steady application of brakes on rough or slick road surfaces when the ABS is activated in an effort to maintain tire traction."[5] COE 8.

In Toyota's letter to its dealers, Toyota explained:

> [Toyota] has received complaints of inconsistent brake feel during slow and steady application of brakes on rough or slick road surfaces when the anti-lock brake system (ABS) is activated in an effort to maintain tire slippage. The system, in normal operation, engages and disengages rapidly (many times per second) as the control system senses and reacts to tire slippage. If the same brake pedal force is applied under these conditions, in the worst case, this may lead to an increase of vehicle stopping distance and thus raise the possibility of a crash.

COE 9.[6]

To address the condition, REDACTED

REDACTED

REDACTED            Ito Decl. ¶ 9; COE 29 at 52:24-53:7, 63:7-15; COE 30, Walker Decl. ¶ 20. REDACTED

REDACTED

REDACTED and nullified the mathematical possibility of extended stopping distance

---

[4] NHTSA closed the preliminary evaluation on July 12, 2010. COE 13. Because Toyota instituted the voluntary recall under 49 U.S.C.A. § 30118 (d) (2000) (the "Motor Vehicle Safety Act"), NHTSA maintains full oversight over the recall.

[5] Since the HS 250h had a similar but not identical braking system, and even though it was not subject to NHTSA's preliminary evaluation, Toyota decided to include the HS 250h in the recall. COE 8.

[6] In support of their motion, Plaintiffs submitted Toyota's recall letter to its customers, which contains similar language. Mov. Br. at 7.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

8

OPPOSITION TO CLASS CERTIFICATION MOTION

1   present in the pre-recall condition.  *Id.*[7]

2       Based on Mr. Walker's testing and his review of data concerning pre-recall

3   and post-recall ABS performance of the 2010 Prius, Mr. Walker confirmed that the

4   software update adequately addressed owner concerns and concluded "there is no

5   basis to assert that the recall and/or reflash actions taken by Toyota were ineffective

6   in any way."  Walker Decl. ¶ 22; COE 1 at 7-8.

7       After the recall, a small number of customers noted that they still felt

8   "something" during an ABS activation.  But this was expected.   Walker Decl. ¶ 23.

9   As Gary Smith, Toyota's 30(b)(6) designee,[8] alluded to at his deposition, even after

10   the software update was installed in their vehicles some drivers may continue to

11   perceive a momentary reduction in deceleration because the vehicles still employ

12   ABS.  *Id.*; Declaration of Gary Smith ("Smith Decl.") ¶ 15.  This phenomenon is the

13   normal function of a properly-performing ABS, is common to all vehicles equipped

14   with ABS, is specifically not the recall condition, and is not evidence of a defect in

15   the system performance.  Walker Decl. ¶ 23.  Some Prius and HS 250h vehicle

16   operators may be less attuned to associate the phenomenon with normal ABS

17   activation, however, because there is no pedal chatter vibration like there is in

18   conventional vehicles.  *Id.* at 24; *see also* COE 16 at 104:21-105:16, 141:13-142:13

19   (Mr. Choi explaining that he believed he was not experiencing ABS activation in his

20   Prius because he did not feel "ABS feedbacking.")

21

22

23

24   _____

25   [7] Ten days prior to the announcement of the recall, Toyota instituted a manufacturing change for all newly produced Prius vehicles.  The manufacturing change consisted of the same modification to the ABS ECU software programming used in the recall.  Ito Decl. ¶ 11

26

27   [8] Gary Smith was Toyota's corporate representative.  He was not, as Plaintiffs assert, Toyota's person most knowledgeable, nor did Toyota have an obligation to produce a person most knowledgeable under the Federal Rules of Civil Procedure. F.R.C.P. 30(b)(6).

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

9

OPPOSITION TO CLASS CERTIFICATION
MOTION

### d.    Empirical Data Confirms the Issue Is Not a Continuing Issue

Empirical data confirms on a macro-level that the ABS issue is not a continuing issue in the putative class vehicles.  Smith Decl. ¶ 15.  For example, graphs showing pre-and post-recall customer complaints to Toyota's Customer Experience Center show that after the production change and recall were implemented, consumer brake-related complaints dropped precipitously back to expected levels and have stayed at or below those levels ever since.  *Id*. at ¶¶ 9-10; COE 5.  If the software update did not remedy the issue, complaints would not have fallen directly in line with the implementation of the production change and recall.



COE 5.                                        COE 6.

NHTSA brake-related complaints for the 2010 Prius show an almost identical pattern, with a huge spike in brake-related complaints for the 2010 Prius vehicles in early 2010, when the media reported about the ABS issue, and then a sharp decline in complaints subsequent to the recall.  Smith Decl. ¶¶ 11-12; COE 6.

Similarly, if there was a continuing ABS issue, complaints from new Prius customers about brake effectiveness in Toyota's post-recall product quality surveys would continue at pre-countermeasure levels, but this is not the case.  Smith Decl. ¶¶ 13-14; COE 7.  The below graph demonstrates that customers who purchased post-countermeasure production vehicles did not complain about the brakes.  *Id*.

///

///

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

10

OPPOSITION TO CLASS CERTIFICATION
MOTION



COE 7.

Simply put, the "mountain of evidence" that actually exists in this case shows that Toyota's recall adequately addressed customer concerns and Plaintiffs have no class-wide evidence to the contrary.[9]

**ARGUMENT**

**I.    Rigorous Analysis Is Required to Ensure Plaintiffs Satisfy Rule 23**

In seeking class certification, Plaintiffs must establish by a preponderance of the evidence: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a); *Mazza,* 666 F.3d at 588.  Plaintiffs must further establish that common questions predominate over individual questions, such that a class action is superior to other available methods for fairly and efficiently adjudicating a case.  Fed. R. Civ. P. 23(b)(3).

Citing out-of-date authority, Plaintiffs assert that "it is generally accepted that Rule 23 should be liberally construed."   Mov. Br. at 19.  But the Supreme Court in *Dukes* squarely rejected Plaintiffs' "minimalist" test, explaining that a district court must perform a "rigorous analysis" to ensure Rule 23's requirements are satisfied. *Dukes*, 121 S. Ct. at 2551-52.  "Rule 23 does not set forth a mere pleading standard."  *Id*.  "A party seeking class certification must affirmatively demonstrate

---

[9] *See* Toyota's Evidentiary Objections filed concurrently herewith.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

11

OPPOSITION TO CLASS CERTIFICATION MOTION

his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (italics in original); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981-84 (9th Cir. 2011) (holding that a district court cannot blindly accept Plaintiffs' allegations at certification); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318, 321 (3rd Cir. 2009) ("a party's assurances to the court that it intends or plans to meet the requirement [of Rule 23] is insufficient," noting that a plaintiff must do more than state an "intention" to try the case in a manner that satisfies Rule 23 requirements).

In many cases, that "rigorous" analysis or consideration will overlap with the merits of plaintiffs' claims. As the Ninth Circuit recently explained, "it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 981.

As a result of *Dukes* and *Ellis*, this Court must look beyond Plaintiffs' allegations and inquire into the relevant facts and evidence —not to resolve the merits, but to determine whether, among other things, common issues are present and, if so, whether they "predominate" over individualized issues and whether a class action is "superior" to other methods for adjudicating the controversy. *Dukes,* 131 S. Ct. at 2551; *see also Ellis*, 657 F.3d at 981-84. And this "court's rigorous analysis" should disregard the type of speculative evidence that makes up most of Plaintiffs' "evidence" of a defect and "evidence" that the recall did not remedy the ABS issue. *See Casida v. Sears Holdings Corp.*, 2012 WL 3260423, at *2 n.1.[10]

---

[10] The Supreme Court recently granted *certiorari* to address whether "a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 155 (E.D. Pa. 2010), *aff'd*, 655 F.3d 182 (3d Cir. 2011), *cert. granted in part*, No. 11-864, 2012 WL 113090 (U.S. June 25, 2012).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

12

OPPOSITION TO CLASS CERTIFICATION
MOTION

## II.      The Impact of the Recall on Plaintiffs' Class Claims

As this Court already recognized, as a prerequisite to class certification, Plaintiffs must demonstrate that the recall did not remedy the ABS issue.  COE 15 at 19 ("the factual questions [as to whether the recall remedied the ABS] issue is more properly resolved on a motion for certification.").  Because the efficacy of the recall impacts whether any of Plaintiffs' claims can be certified, class certification analysis should begin (and end) with the recall.

### A.      A CLRA Class Cannot Be Maintained

The CLRA provides that "[n]o action for damages may be maintained under Section 1781 (the class action provision of the CLRA) ***upon a showing*** by a person alleged to have employed or committed methods, acts, or practices" under the CLRA if all the following exist:

(1)     All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

(2)     All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

(3)     The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.

(4)     The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

Cal. Civ. Code § 1782(c) (emphasis added).

In response to the Court's clear direction that it would determine whether the recall impacts Plaintiffs' ability to certify a CLRA claim at the certification stage, Toyota has made the requisite showing through the recall and recall efficacy evidence that it has met these four requirements.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

13

OPPOSITION TO CLASS CERTIFICATION
MOTION

### 1.     Toyota Identified and Notified Consumers

Consistent with the CLRA and pursuant to the Motor Vehicle Safety Act and related regulations, Toyota made reasonable efforts to identify affected consumers and advise them to bring their cars to authorized Toyota dealers for installation of the software update, at no charge to Plaintiffs or the putative class members.  COE 10, 11.  Plaintiffs have not questioned Toyota's notice efforts, nor could they because according to Toyota's NHTSA filings, Toyota inspected and/or completed the software update on 94.5% of the 2010 Prius and HS 250h vehicles by December 31, 2010, COE 10, and 96.0% of the 2010 Prius and HS 250h by June 30, 2011. COE 11.

### 2.     Toyota Provided A Reasonable Repair

Toyota's showing that the software update remedied the ABS issues includes:

- Toyota's engineering and testing documents demonstrating the efficacy of the software update.  COE 1, Attachment E; COE 30.
- The testimony of the general manager of the department that developed the ABS system for the 2010 Prius and HS 250h and who was also involved in developing the software update, that the software update remedied the ABS issue.  Ito Decl. ¶¶ 9-13.
- The testimony and confirmation testing of James Walker, Toyota's engineering expert, who has over 23 years of automotive mechanical engineering experience.  Walker Decl. ¶¶ 2-4, 21, 22; COE 1 at 8.   Not only did Mr. Walker review Toyota's software update testing data to confirm the efficacy of the software update, but he performed his own independent testing. Walker Decl. at ¶ 22.  Mr. Walker's verification testing included a post recall 2010 Prius that he exposed to a large number of maneuvers that would generate ABS actuation in order to further confirm the effectiveness of the software update.  COE 1 at 7-8.  Based on his experience, his review of Toyota's data and his own independent

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

14

OPPOSITION TO CLASS CERTIFICATION
MOTION

testing, Mr. Walker confirmed "that the software update adequately addressed owner concerns" and concluded that "there is no basis to assert that the recall and/or reflash actions taken by Toyota were ineffective in any way." *Id.* at 8; Walker Decl. ¶¶ 21-22.

- Customer feedback to NHTSA and Toyota's customer service center, which shows that after the recall was implemented, consumer brake-related complaints in the 2010 Prius dropped back to expected levels and *have stayed at or below those levels*. Smith Decl. ¶¶ 9-15. It is important to note, as this Court recognized in denying Toyota's Motion to Dismiss, the recall and even NHTSA's decision to open the preliminary investigation, were driven by customer complaints. COE 15 at 4. Thus, if the data demonstrates that customers are no longer complaining, this is clear evidence, and certainly more than a "showing," that the ABS issue has been remedied on a class-wide basis.

- The sworn testimony of lead plaintiff, Mr. Choi, who said the ABS software update "solved the problem," COE 16 at 138:14–21; "the feeling looks like it disappeared," *id*. at 122:4-16; and his "brake system is working fine." *Id*. at 149:16-20.

- Customer postings on the internet confirming the software update was effective for their vehicles. COE 45.[11]

In contrast, Plaintiffs' claimed "mountain of evidence" that the defect persists is: (1) Ms. Kramer's uncorroborated assertions that she still feels the alleged defect; and (2) eight unattributed and/or inadmissible internet blogs and customer complaints, the most recent of which was made two years ago, out of the approximately 150,000 cars that have been remedied. Mov. Br. at 14-15. Plaintiffs

---

[11] It is Toyota's position that internet comments, positive or negative, are inadmissible hearsay. But to the extent the Court may consider Plaintiffs' submission of internet complaints, the Court should also consider Toyota's internet comments showing that the recall worked.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

15

OPPOSITION TO CLASS CERTIFICATION
MOTION

have no expert to opine on the efficacy of the software update, no testing to suggest the recall did not work, no empirical data related to the putative classes' reaction to the recall and no admissible evidence that the ABS issue persists on a class-wide basis.

### 3.    Cessation of Methods, Acts or Practices

Plaintiffs do not contest that all Prius vehicles manufactured after January 28, 2010 and all Lexus HS 250h vehicles manufactured after February 2010 contain the countermeasure.[12]   Ito Decl. ¶¶ 11-13.   The empirical data from Toyota's 30-day and 90-day post-product Prius new owner surveys for vehicles sold after the recall *(see infra* p. 11, COE 7)  demonstrates that customers who purchased post-countermeasure production vehicles did not complain about the brakes.  Smith Decl. ¶¶ 13-14.  Plaintiffs provide no credible, reliable evidence that the production change failed to remedy the ABS issue.

Since Toyota has made the necessary showing, if not conclusively proven, that it has met all the Section 1782(c) requirements, Plaintiffs are precluded from maintaining a CLRA class action under Section 1781 as a matter of law.  *See, e.g.*, *Match v. Pet Food Express, LTD*, No. RG03127285, 2005 WL 5301555 (Cal. Super Ct. Jan. 28, 2005) (finding that because defendant complied with Section 1782, plaintiffs could not sustain a class action under the CLRA).[13]

To the extent Plaintiffs seek "an injunction ordering Toyota to implement an effective remedy for the Defect," COE 14, "Prayer for Relief," subparagraph I, Plaintiffs' request is moot because Toyota already provided that remedy through the recall.  *See Winzler*, 681 F.3d at 1211; *see also Arabian v. Sony Elecs., Inc*, No. 05-

---

[12] Notably, the putative class does not include consumers who purchased vehicles after the announcement of the recall.

[13] Is it not surprising that there is a dearth of case law addressing Section 1782(c) because generally there is no incentive for plaintiffs to file claims when a product has been remedied by the manufacturer.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

16

OPPOSITION TO CLASS CERTIFICATION
MOTION

1  CV-1741 (WQH), 2007 WL 627977, at *8 (S.D. Cal. Feb. 22, 2007) (finding no

2  need for injunctive relief where there was little threat of continuing harm).

3       In *Winzler*, the plaintiff alleged that certain Corolla vehicles had defective

4  engine control modules and she sought an order requiring Toyota to create an

5  equitable fund to pay for repairs.  681 F.3d at 1209.  The district court dismissed

6  Winzler's complaint for failure to state a claim and she appealed.  Thereafter,

7  Toyota announced a nationwide NHTSA-supervised recall.  *Id*.  Because Toyota

8  was required by the Motor Vehicle Safety Act to carry out its promise to remedy the

9  purported defect, the tenth Circuit held that plaintiff's claims were moot.  *Id*. at

10  1211.  It also stressed that because the plaintiff had a commitment in hand for

11  "precisely the relief she seeks," judicial involvement could result in a "waste [of]

12  public resources…" and would "surely add new transaction costs for Toyota and

13  perhaps reduce the incentive manufacturers have to initiate recalls, all while offering

14  not even a sliver of additional relief."  *Id*.  Such a waste is even more real here

15  because unlike in *Winzler*, where there was only a promise that Toyota would fix or

16  replace the allegedly defective engine, Toyota has already provided the injunctive

17  remedy Plaintiffs seek.

18       Additionally, Plaintiffs cannot pursue a Rule 23(b)(2) certification of any

19  class because Plaintiffs seek predominately monetary relief.  *See Zinser v. Accufix*

20  *Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).  Plaintiffs cannot

21  legitimately argue that the injunction Plaintiffs seek is the driving force behind this

22  litigation, when such an injunction will be of little interest or benefit to most

23  putative class members who already believe the recall remedied the ABS issue.  *See*

24  COE 5, 6, 7; Smith Decl. ¶¶ 9-15.

25       **B.     Recall Efficacy Is a Predominately Individual Issue**

26       For the first thirty pages of their brief and in all of their prior filings that

27  discussed the recall, Plaintiffs claim that "some drivers" or "many drivers" may still

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

17

OPPOSITION TO CLASS CERTIFICATION
MOTION

1  experience the ABS issue.[14]  *See, e.g.*, Mov. Br. at 14.  But, on page thirty, Plaintiffs

2  claim for the first time that they "adduced evidence that even today the defect

3  persists in **all** of the defective vehicles." Mov. Br. at 30 (emphasis in original).

4  Plaintiffs make this new assertion because Plaintiffs recognize that for the class to

5  be certified they must "adduce[] evidence that…the defect persists in **all** putative

6  class vehicles." *Id*.  But Plaintiffs have not adduced any class-wide evidence

7  suggesting the "defect persists in all" vehicles, as Plaintiffs' evidence does nothing

8  more than establish ***some people***, including Ms. Kramer, may still feel a decrease in

9  deceleration when ABS activates at low speeds over bumps and slippery surfaces.

10  Even Plaintiffs' "evidence" of an October 26, 2010 Buzz Alert[15] states that "there

11  are currently 30 posts which reveal a range of opinions from owners who feel that

12  the recall did mitigate the issue, but also those who feel that Toyota 'knows' about

13  this issue but refuses to 'fix' the problem."  Mov. Br. at 15.

14      Assuming "some" people still perceive an ABS issue, like Plaintiff Kramer,

15  and others do not, like Plaintiffs Choi and Del Real, the efficacy of the recall is an

16  individual issue that prevents certification of this case because the only way to

17  determine if a putative class member believes he or she is still experiencing the ABS

18  issue is to ask him or her.  Of course, even if a putative class member believes he or

19  she is experiencing the ABS issue, further inquiry is needed to determine whether

20  the feeling is just normal ABS activation or the ABS recall issue.

21

22

23  ----

[14] For example, Plaintiffs state "[d]espite the software update, **some drivers**,
including Plaintiff Kramer continue to report experiencing the Defect."  Mov. Br. at
24  14 (emphasis added).  "Many drivers, like Plaintiff Jessica Kramer, still frequently
experience the Defect." *Id.* at 30.  "Moreover, many drivers, including Plaintiff
25  Kramer, continue to experience the Defect." *Id.* at 29.

26  [15] Buzz Alerts were periodic emails sent by non-party Nielsen Company to alert
Toyota's product quality group about internet discussion concerning Toyota
vehicles.  COE 27 at 182:11-183:15.  In order to compile the Buzz Alerts, the
27  Nielsen Company searched the internet for Toyota related chatter and prepared
periodic reports for Toyota's product quality group.  *Id.*  Toyota objects to the
28  admissibility of this and all other Buzz Alerts.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

18

OPPOSITION TO CLASS CERTIFICATION
MOTION

1    A successful recall of a putative class member's vehicle precludes relief under

2   all of Plaintiffs' causes of action because any customer, including Mr. Choi and Ms.

3   Del Real, who are satisfied that the recall remedied the ABS issue, has no

4   cognizable injury or claim for damages.  Such customers received exactly what they

5   bargained for—a car that, in the event of a defect, would be repaired by Toyota at no

6   cost to the owner.  Customers are legally entitled to nothing more.[16]  *Stearns v.*

7   *Select Comfort Retail Corp.*, No. 08-2746 (JF), 2009 WL 1635931, at *5 (N.D. Cal.

8   June 5, 2009) (finding that when full refunds were provided and accepted, plaintiffs

9   could still not seek a replacement product as they had no "right to a defect-free bed

10  in addition to the full refund"); *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315,

11  320 (E.D. Mich. 2005) (finding that there is no legally cognizable injury when a

12  manufacturer fulfills its warranty obligations and repairs or replaces the product or

13  offers a full refund).  Thus, the efficacy of the recall in each putative class member's

14  vehicle will need to be determined individually in order to assess that class

15  member's injury and damages, if any.

16    Whether the recall worked also impacts the ability to ascertain which putative

17  class members are part of the class because such determination is based on a

18  subjective belief whether the software update remedied the ABS issue in a particular

19  vehicle.  *Spencer v. Beavex, Inc.*, No. 05-CV-1501 (WQH), 2006 WL 6500597, at

20  *7 (S.D. Cal. Dec. 15, 2006) ("[t]he Court must be able to determine class members

21  without having to answer numerous fact-intensive questions.").

22    Additionally, when a company issues a recall that provides most of the

23  putative class the relief it seeks, courts have held that a class action is not a superior

24  method of adjudication.  *See e.g.*, *Muehlbauer  v. General Motors Corp.*, No. 05 C

25  ──────────────────────

26  [16] The New Vehicle Limited Warranty for the 2010 Prius and Lexus HS 250h
    covers repairs and adjustments needed to correct defects in materials or workman-

27  ship of any part supplied by Toyota [Lexus], subject to the exceptions indicated
    under "What Is Not Covered" and that the "performance of necessary repairs and

28  adjustments is the exclusive remedy under these warranties or any implied
    warranties . . . ."  COE 31.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

19

OPPOSITION TO CLASS CERTIFICATION
MOTION

2676, 2009 WL 874511 (N.D. Ill. Mar. 31, 2009) (denying motion for class certification and explaining "it may be that a recall procedure [to address an alleged defect in the ABS system of certain GM vehicles] is insufficient, but, at the very least, its existence will complicate matters because the court will need to make individual factual inquiries into each class member's claims"); *Daigle v. Ford Motor Co.*, Civ. No. 09-3214, 2012 WL 3113854, at *5 (D. Minn. July 31, 2012) (finding that a class action is not a superior method because a recall of subject vehicle "provides most of the putative class the relief it seeks.").

Finally, at least one court denied certification where "plaintiffs want relief that duplicates a remedy that most buyers already have received and that remains available to all members of the putative class" because "a representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is an offer is not adequately protecting the class members' interest." *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011).

## III.    Plaintiffs' Claims Do Not Satisfy the Commonality Requirement

Although Toyota's recall ends the inquiry, there are numerous other reasons Plaintiffs fail to meet their Rule 23 requirements, including commonality.

Plaintiffs assert that commonality is construed "permissively" and "that the commonality requirement is interpreted to require very little; demanding only one single issue common to the proposed class." Mov. Br. at 20 (citations omitted). But again Plaintiffs cite the pre-*Dukes* standard. In *Dukes*, the Supreme Court explained that commonality is "not the raising of common 'questions -- even in droves -- but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Dukes*, 131 S. Ct. at 2551 (citation omitted). The Supreme Court further explained that the mere recitation of *prima facie* elements of a claim is insufficient to prove commonality. *Id.* This is because "any competently crafted class complaint literally raises common 'questions'… Reciting

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

20

OPPOSITION TO CLASS CERTIFICATION
MOTION

these questions is not sufficient to obtain class certification." *Id.* (citations omitted); *see also Ellis*, 657 F.3d at 981 (noting that "it is insufficient to merely allege any common questions").

Despite *Dukes'* heightened requirements, the "common issues" Plaintiffs present are the type of boilerplate common questions the Supreme Court and the Ninth Circuit have rejected.[17]  Moreover, Plaintiffs' own arguments and "evidence" establish that many of these so-called "common issues" are anything but common.

## IV.    Individual Questions Predominate Over Common Questions

"Even if Rule 23(a)'s commonality requirement may be satisfied. . . . the predominance criterion [of Rule 23(b)(3)] is far more demanding." *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  Plaintiffs have not met this more demanding standard.

### A.    Plaintiffs' Advertising Related Claims Raise Individual Issues

In its order denying Toyota's motion to compel arbitration, the Court indicated that "the operative documents at issue [are] Toyota's marketing materials."  COE 32 at p. 19.  But if this is a marketing case, then it cannot be certified based on *Mazza*.  In *Mazza*, the Ninth Circuit held that "[i]n the absence  of the . . . massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596.  The Court then held that Honda's representations of the Collision Mitigation Braking System ("CMBS") in Acura RL vehicles contained in marketing materials that included the

---

[17] Plaintiffs' alleged common issues include: (1) knowledge of issue, (3) exclusive knowledge, (4) whether information is material and (5) active concealment, which are all elements of Plaintiffs' CLRA claim.  Alleged common issues (6) utility of omission outweighing harm, (7) whether conduct was contrary to legislatively declared policy and (8) whether members of the public are likely to be deceived are elements of Plaintiffs' UCL Claim.  Alleged common issue (9) whether at the time of sale or lease, the vehicles were fit for their ordinary purpose, is an element of Plaintiffs' implied warranty claim.  Finally, alleged common issue (10), whether Plaintiffs and members of the class were harmed as a result of Defendants' conduct, is an element of all of Plaintiffs' claims.  Mov. Br. 20 at n 20.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

21

OPPOSITION TO CLASS CERTIFICATION
MOTION

1  Acura RL product brochure, television commercials describing the CMBS's

2  operation, advertising in magazines, on the internet and at kiosks at Acura

3  dealerships, were insufficient to justify certification of the class because "it is likely

4  that many class members were never exposed to the allegedly misleading [CMBS]

5  advertisements" *Id.* at 595.

6      Just as in *Mazza,* here it is equally if not more "likely that many class

7  members were never exposed to the allegedly misleading advertisements" related to

8  the ABS system at issue, because according to Professor Kevin Keller and an

9  independent third-party review of Toyota's advertisements related to the 2010 Prius

10  and HS 250h, the ABS system was not mentioned in *any* of the print, television or

11  radio advertising for the 2010 Prius and only one HS 250h advertisement mentioned

12  braking (and *none* mentioned ABS or stopping distance).  COE 3 at ¶¶ 33-34.

13      Toyota did list the ABS in the Prius and Lexus HS 250h hard copy and online

14  product brochures as being a standard feature, but the Ninth Circuit in *Mazza* made

15  clear that a description of a component in a product brochure or on a website,

16  "fall[s] short of the 'extensive and long-term advertising campaign' at issue in

17  *Tobacco II*."  *Mazza*, 666 F.3d at 596 (citation omitted).  In fact, the description of

18  the CMBS in Honda's product brochure was much more extensive than Toyota's

19  mere mention in its brochures that the 2010 Prius and Lexus HS 250h vehicles are

20  equipped with an ABS system as part of the Star Safety System.  *Compare* COE 33

21  (pages from Honda's product brochure describing CMBS), and COE 34 (pages from

22  Toyota's 2010 Prius product brochure mentioning ABS).

23      Plaintiffs attempt to escape *Mazza* by *alleging* without support that Toyota

24  maintained an "extensive long-term advertising campaign focused on safety" that

25  blanketed the United States market and that the putative class supposedly all relied

26  on when purchasing their vehicles.  Mov. Br. at  3-6.  Plaintiffs point to no

27  documents, no testimony and no expert to support the existence of such a campaign.

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

22

OPPOSITION TO CLASS CERTIFICATION
MOTION

Rather, Plaintiffs merely cite to allegations in their complaint that Toyota engaged in a Star Safety System "aggressive marketing campaign."  Mov. Br. at 4-5.

But Plaintiffs cannot rely on Toyota's advertising of the Star Safety System because other than mentioning the Star Safety System in brochures, the Star Safety System was not a "central part of the marketing for the 2010 Prius" until March 2010, *after* all putative class members purchased their vehicles.  COE 3 at ¶ 33 ("Star Safety System [was] not mentioned in any of the advertising for the 2010 Prius"), COE 28 at 24:22-25:8.  Thus, Plaintiffs could not have relied on Star Safety-related advertisements prior to purchasing their vehicles because such advertising did not exist when Plaintiffs purchased their vehicles.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147-48 (9th Cir. 2012).

It is not surprising that Plaintiffs do not identify any safety-related advertising because, according to Professor Keller, the core messaging for the 2010 Prius "emphasized the car's fuel efficiency and environmental benefits," COE 3 at ¶ 27, and  safety was not a theme. *Id.* at ¶¶ 33-34.

Understanding the weaknesses of their ABS marketing case, Plaintiffs suggest that Toyota should be liable to Plaintiffs because Toyota has a *reputation* for safety and reliability.  Mov. Br. at 3-4.  This position is contrary to law.  In cases challenging representations or omissions relating to other well-known products such as Diet Coke, Orville Redenbacher popcorn, and Listerine mouthwash, courts have found certification based on reputation improper when, like here, people buy products due to brand loyalty, family tradition or other reasons completely unrelated to any specific misstatement.

For example, the California Court of Appeals refused to certify a class of Listerine purchasers who claimed that its efficacy had been misleadingly marketed, noting "perhaps the majority of class members who purchased Listerine during the [relevant period] did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other reasons."

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

23

OPPOSITION TO CLASS CERTIFICATION MOTION

*Pfizer Inc. v. Sup. Ct.*, 182 Cal. App. 4th 622, 632 (2010).  *See also Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 582 (N.D. Ill. 2005) ("marketing may be just one of many reasons for an individual's decision to purchase the product") *aff'd,* 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of certification when dealing with an iconic product like Diet Coke); *Fine v. ConAgra Foods, Inc.*, CV-NO. 10-01848 (SJO), 2010 WL 3632469, at *3-4 (C.D. Cal. Aug. 26, 2010) (denying certification because many purchases were likely due to brand loyalty).

Toyota's reputation for safety and reliability was earned after decades of providing safe and reliable vehicles, not as a result of a limited Prius advertising campaign that focused on neither.  Toyota customers, including the named plaintiffs, purchase Toyota vehicles based on personal experience, brand loyalty, friend and family recommendations and many reasons other than Toyota's advertising.  For example, Mr. Choi purchased his Prius, in large part, because of his previous experience with Toyota vehicles, which he described as "excellent" vehicles, and because of the gas mileage of the Prius.  COE 16 at 33:7-35:6, 37:25-38:18, 51:24-52:4.  Ms. Del Real purchased her vehicle because she "had a good history with Toyota, might as well get another Toyota, it's also going to help me with my gas." COE 17 at 50:13-22.  Mr. Scholten has owned or leased several Toyota vehicles, COE 18 at 14:23-15:4, 27:13-17, 30:21-31:3, and his decision to purchase a 2010 Prius was influenced by his experience driving his Toyota Highlander Hybrid and a 2010 Prius loaner car, *id*. at 33:12-15, 41:11-42:3, as well as Consumer Reports, Edmunds and other third-party website evaluations of the Prius.  *Id*. at 36:12-37:21.  Ms. Kramer purchased her vehicle because her father "thought the Prius was a good idea," COE 19 at 39:21-25, her friends recommended the Prius because it got good gas mileage, *id*. at 49:19-50:12, 50:23-51:15, and her German-car mechanic told her that Toyotas were reliable.  *Id*. at 39:9-13.

In sum, Plaintiffs do not allege a "common advertising campaign that had little to no variation" on which to base class claims, much less one alleged with

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

24

OPPOSITION TO CLASS CERTIFICATION
MOTION

1   particularity.  *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011).[18]

2   Nor can Plaintiffs establish that Toyota engaged in any campaign related to safety,

3   let alone a "pervasive" decades-long advertising campaign, that would have been

4   seen by a sufficient number of the putative class members to allow certification.

5   **B.      The Materiality of the ABS Issue Will Vary**

6   The ABS issue had two components, an inconsistent brake feel and a

7   mathematical possibility of extended stopping distance if the driver maintained

8   constant brake pressure.  Plaintiffs provide no surveys, expert opinions or even

9   putative class declarations to suggest that either aspect of the ABS issue is or would

10  have been material to all putative class members.

11  **1.      The Materiality of the Inconsistent Brake Feel Is Subjective**

12  Inconsistent brake feel based on ABS activation is exactly that – a subjective

13  feeling or perception of inconsistent brake feel.  Since perceptions are unique to

14  each individual, it is not surprising that Plaintiffs have provided no common proof

15  that all members of the putative class had the same impression of  the ABS brake

16  feel.  A class action revolving around a perception of inconsistent brake feel would

17  require endless individual inquiry, including requiring each putative class member

18  to remember whether he or she experienced the inconsistent brake feel prior to the

19  software update in his or her vehicle and whether that subjective feeling would have

20  impacted how much he or she was willing to pay for their Prius.  Courts routinely

21  deny certification in cases that revolve around such subjective differences between

22  class members.  *See, e.g.*, *Martinez v. Welk Grp., Inc.*, No. 09cv2883 (AJB), 2012

23  WL 2888536 (S.D. Cal. July 13, 2012) (denying certification because of subjective

24  differences between class members); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp.

25

26  [18] This case is unlike *Johnson*, where this Court found that all class members were exposed to a "common advertising campaign that had little to no variation" that expressly promoted the subject characteristic that distinguished YoPlus Yogurt.

27  *Johnson*, 276 F.R.D. at 521.  Here, the ABS system at issue is not the characteristic that distinguishes the Prius in the marketplace; nor was there any common

28  advertising campaign centered around the ABS system.  COE 3 at 33-34.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

25

OPPOSITION TO CLASS CERTIFICATION
MOTION

2d 1075, 1089 (N.D. Cal. 2011) (denying certification where membership in the class could only be defined by putative class members' "subjective estimate.") Two of the four named Plaintiffs initially thought the brake feel was just a characteristic of the vehicle and they did not complain at all until after they received the recall notice. COE 16 at 97:14-98:11; COE 19 at 122:4-25. One of the other named Plaintiffs never experienced the inconsistent brake feel. COE 17 at 69:8-72:23. Given the differences in perception between the named Plaintiffs, it is implausible that all customers perceived the ABS issue the same way or at all.

### 2. The Possibility of Extended Stopping Distance is not Material Because It Is Dependent on Atypical Driving Behavior

Plaintiffs cannot demonstrate that the mathematical possibility of extended stopping distance was material to the putative class. This is because, as Toyota explains in its recall documents, only in the "worst case" scenario can the ABS issue possibly extend stopping distance and that is only if a driver maintains constant brake pressure, *i.e.*, fails to push harder on the brake pedal when they do not believe they are stopping fast enough. COE 9. But typical drivers continuously modulates brake pedal force, especially if they perceive that greater deceleration is necessary to stop a vehicle within their particular expectation. Ito. Decl. ¶ 7; Walker Decl. ¶ 19; Dorris Decl. ¶¶ 15-16.

Mr. Ito and Mr. Walker, with over 50 years of combined experience in the automotive engineering industry, and Dr. Dorris, an expert in human factors, each testified that a typical driver will increase brake pedal pressure in this scenario. *Id.* Mr. Ito and Mr. Walker's experience is confirmed not only by the authoritative literature, but the 75-participant Driver Braking Study, which confirmed that typical, if not all, drivers push harder on the brake pedal when they perceive that additional braking force is needed. Dorris Decl. ¶¶ 15-16; *see also* COE 44 (video excerpts from Driver Braking Study). As Plaintiff Choi volunteered at his deposition, when he is not stopping fast enough, he pushes harder on the brake pedal. COE 16 at

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

26

OPPOSITION TO CLASS CERTIFICATION
MOTION

99:17-24.   Even Plaintiffs' economist, Dr. Williams, had to admit that if his car was not slowing down as fast as he would like, he would "increase the pressure on the brake pedal."  COE 35 at 79:15-80:10.

Thus, the ABS issue could only have a material impact on extended stopping distance in the real world if the driver failed to do what is typical of most drivers—press harder on the brake pedal to stop faster.  And materiality under that atypical circumstance could be proved only by individual inquiry, not by common proof.

## C.   The Materiality of an Alleged Omission Related to the ABS Issue Is Not Subject to Common Proof

Even though Plaintiffs' marketing claims are premised, in part, on an alleged omission, Plaintiffs never specify what disclosure Toyota should have made prior to the putative class purchasing their vehicles.  Given Plaintiffs' allegations, it can only be assumed that the information Plaintiffs believe should have been disclosed is the information in Toyota's recall notice, *i.e.*, if a Prius encounters a rough or slippery road, and if the ABS is activated, there may be an inconsistent brake feel and if a driver does not push harder on the brake pedal, then in the worst case, stopping distance might be extended which could increase the chance of an accident.  But, as discussed above, without having to be told, the typical driver instinctively increases brake pedal pressure when he or she believes additional braking force is necessary.  Thus, disclosing to the putative class that they need to push harder on the brake pedal if they want to stop faster following ABS activation could have no material impact on a typical driver already because it is essentially disclosing something the typical driver knows and does.

Professor Keller opines that consumers who would read such a disclosure would not uniformly change their buying decisions in order to avoid possible exposure to an alleged risk, let alone something so amorphous as the ABS issue, because other factors such as vehicle cost, fuel efficiency, environmental friendliness, performance, and innovative technology play decisive roles in a

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

27

OPPOSITION TO CLASS CERTIFICATION
MOTION

consumer's decision to buy a specific car, including the 2010 Prius and Lexus HS 250h.  COE 3 at ¶¶ 95-101;  *see also* Dorris Decl. ¶¶ 22 ("[f]rom a human factors perspective and specific to this case, it is my opinion that a disclosure related to an inconsistent brake feel or the theoretical possibility of extended stopping distance, which could be overcome by the driver increasing brake pedal force, would not materially impact a typical consumer's behavior, including their decision to purchase a vehicle.").

Case law supports the conclusions of Professor Keller and Dr. Dorris.  In *Edwards v. Ford Motor Co.*, No. 11-1058 (MMA), 2012 WL 2866424 (S.D. Cal. June 12, 2012), the court held that Ford presented persuasive expert evidence, very similar to Professor Keller's testimony, that the level of importance a potential car buyer places on safety varies from consumer to consumer.  *Id.*, *see also Webb v. Carter's Inc.,* 272 F.R.D. 489, 503 (C.D. Cal. 2011) (concluding that materiality was "not subject to common proof under the reasonable consumer standard and that individual issues predominate" because defendant presented expert evidence that if a disclosure had been provided, "consumers would not be expected to respond uniformly to the message."); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 158 (Pa. Super. Ct. 2002) (recognizing that "consumers could have a wide range of reactions to the undisclosed [safety] information, depending on a number of factors including: (1) their personal degree of risk-aversion; and (2) their assessment of the other advantages and disadvantages of buying [the vehicle at issue].").

### D.   Binding Arbitration Provisions Create Individual Issues

As the Court is aware, Toyota's appeal of the Court's denial of Toyota's motion to compel arbitration was recently argued to the Ninth Circuit.  COE 38.   If the Ninth Circuit finds that Toyota can compel customers to arbitrate their claims, then individual issues would overwhelm any common issues because the impact of such a finding would be that every putative class member's purchase agreement would need to be examined to determine whether the putative class member's

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

28

OPPOSITION TO CLASS CERTIFICATION
MOTION

1  purchase agreement contains an enforceable arbitration provision.  *See Pablo v.*

2  *ServiceMaster Global Holdings Inc.*, No. C08-3894 (S), 2011 WL 3476473, at *2

3  (N.D. Cal. Aug. 9, 2011) (denying motion for class certification due to existence of

4  arbitration agreement applicable to some, but not all, class members and explaining

5  that "a significant portion of this litigation would be devoted to discovering which

6  class members signed such agreements and enforcing those agreements.").

7  **E.  Injury and Damages Are Not Subject to Common Proof**

8  Although this is a putative class action seeking alleged economic losses,

9  Plaintiffs barely mention, and nowhere discuss in their 38-page class certification

10  brief, how they will demonstrate economic losses by each and every class member

11  using common proof.   But this is necessary for certification.  "When fact of injury

12  cannot be established through class-wide proof, class certification is improper."

13  *Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-CV-02573 (JAM), 2009 WL 1514435 at

14  *2 (E.D. Cal. May 28, 2009);  *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 253

15  (C.D. Cal. 2006) (noting that certification is improper where "the variability [of

16  damages] goes to whether an individual class member has any claim at all").

17  No amount of rhetoric about supposed safety defects, the possibility of

18  increased risk of accidents or alleged omissions can overcome this fatal flaw in

19  Plaintiffs' failure to provide proof of class-wide harm.  Aware of this deficiency,

20  Plaintiffs limit class-wide injury and damages to a single reference on page 35 of

21  their brief as follows:

22  Defendants are also aware that the Defect persists in all Defective

23  Vehicles even after receiving the software upgrade, but have not
   notified the public of that fact. As a result, members of the classes

24  overpaid for the Defective Vehicles, suffered a higher-than-expected
   cost of a crash and experienced reduced market prices for their used

25  vehicles. Ex. PP (Expert Report of Michael A. Williams); Ex. QQ
   (Reply Report of Michael A. Williams).

26  Mov. Br. at  35.

27  Plaintiffs' only basis for this assertion of common harm is Dr. Williams'

28  vacuous reports.  COE 36, 37.  But the only thing Dr. Williams concluded was that

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

29

OPPOSITION TO CLASS CERTIFICATION
MOTION

economic theories and methods exist that could possibly be used to assess injury and damages.  *Id.*  He did not implement any of those economic theories or consider how to do so for this case.  *Id.*  Hence, Plaintiffs have failed to identify and present the class-wide evidence Dr. Williams speculates might exist.

The Ninth Circuit has made clear that a class may not be certified merely because the moving party has presented admissible expert evidence opining as to the commonality of certain questions.  *Ellis*, 657 F.3d at 982.  Although the Court found that Dr. William's testimony satisfied a *Daubert* challenge, the Court must still "rigorously analyze" "the **persuasiveness** of the evidence presented" to determine whether there exists a common injury that could "affect the whole class." *Ellis*, 657 F.3d at 982 (emphasis added).

In the wake of *Dukes*, Dr. William's analysis is clearly insufficient to carry Plaintiffs' certification burden related to common injury and damages.  *Dukes*, 131 S. Ct. at 2551-52.  Even pre-*Dukes*, Dr. William's analysis was insufficient.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318, 321 (3rd Cir. 2009).  In *In re Hydrogen Peroxide Antitrust Litigation*, the plaintiff's expert "identified two 'potential approaches' to estimating damages on a class-wide basis," including benchmark and regression analysis. 552 F.3d at 313.  Although the expert opined that "sufficient reliable data" existed to use either of these two approaches, he had not actually performed any analysis using either.  *Id.*  He simply stated an "'intention to prove impact on a class-wide basis." *Id.* at 315.  The defendants offered their own expert economist, who pointed out flaws in the proposed methods. *Id.* at 313-14.  In response, plaintiff's expert "'promised' to come up with a method to overcome this obstacle, without showing or even suggesting how it might be done." *Id.* at 314.

The District Court held that "it was sufficient that [plaintiff's expert] proposed reliable methods for proving impact and damages; it did not matter that [he] had not completed any benchmark or regression analyses, and the court would not require

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

30

OPPOSITION TO CLASS CERTIFICATION MOTION

plaintiffs to show at the certification stage that either method would work." *Id.* at
315.  The Third Circuit disagreed and reversed.  Invoking the "rigorous analysis"
standard required before certifying a class, the Court held that a "party's assurance
to the court that it intends or plans to meet the requirements [of Rule 23] is
insufficient," noting that a plaintiff must do more than state "an 'intention' to try the
case in a manner that satisfies the predominance requirement." *Id.* at 321.

Here, Dr. Williams and Plaintiffs fail to specifically identify any common
proof that Plaintiffs can use to demonstrate the claimed economic losses to class
members who experienced no problems with their vehicles.  Dr. Williams asserts
that a hedonic regression "could" in theory be used to estimate diminution in resale
value as a result of the brake issue.   But, Dr. Williams fails to identify whether there
was actually any diminution in the resale value of the 2010 Prius and HS 250h such
that running a regression analysis would be necessary.  As Professor Topel testified,
absent a showing that prices declined, there is no basis for running a regression to
determine how much of the price decline relates to Plaintiffs' alleged brake defect.
COE 4 at ¶ 13.   In fact, empirical data analyzed by Professor Topel suggests that
2010 Prius vehicles *did not* diminish in value after the announcement of the recall.
COE 4 at ¶¶ 12- 19 (including Exhibits 1a-c showing that the 2010 Prius did not
diminish in value).

Equally perplexing is how Dr. Williams' "expected cost of crashes" theory
can be implemented and why someone who never experienced an accident in their
vehicles should be compensated based on the cost of accidents involving others.
Nor does he explain why a class member should be compensated for the unrealized
possibility that the class member could have been (but was not and will not be)
involved in an accident caused by the ABS issue.

Dr. Williams and Plaintiffs offer the Court nothing more than: (1) a history of
the recall, where Toyota fixed the complained of ABS issue at its own expense; (2)
unsupported accusations of bad motives; (3) a few anecdotal and unverified

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

31

OPPOSITION TO CLASS CERTIFICATION
MOTION

examples of persons claiming to have some issue with their vehicles; and (4) hope
that if the Court certifies a class, they can come up with a plan for common proof.
None of this comes close to identifying, let alone proving, class-wide economic loss
for a class that contains tens of thousands of owners, including some of the named
plaintiffs, who took full advantage of the recall and who have had no subsequent
ABS-related complaints with their vehicles.

## V.      Plaintiffs Are Neither Typical Nor Adequate Class Representatives

"The test of typicality, 'is whether other members have the same or similar
injury, whether the action is based on conduct which is not unique to the named
plaintiffs, and whether other class members have been injured by the same course of
conduct.'"  *Ellis*, 657 F.3d at 984 (citation omitted).  A named plaintiff does not
satisfy the "typicality requirement [if] his 'unique background and factual situation
require[d] him to prepare to meet defenses that [were] not typical of the defenses
which may be raised against other members of the proposed class.'"  *Id*.

Ms. Del Real's claims are not typical of the proposed class because she never
experienced the ABS issue.  When asked about her concerns, Ms. Del Real
responded that "I can't say I felt it not braking.  The only situation I might have
encountered was the slippage,"  COE 17 at 69:13-15, which she described as "I hit
the brakes really hard, then . . . that icon will pop up, a little beep will happen, and
then the brake will just lock up.  If you take your foot off the brake, it's just stopped.
It won't keep rolling . . . I had to release the brake and then it didn't go. I had to like
hit the gas again."  *Id*. at 69:22-70:14.  When she was shown the page from Toyota's
owners-manual, that describes the vehicle's "Hill Assist" feature, she confirmed that
it described the "slippage" she identified as her only concern.  *Id*. at 93:17-95:14.
Of course, "Hill Assist" is irrelevant to this case.  *See* COE 26.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

32

OPPOSITION TO CLASS CERTIFICATION
MOTION

As a Texas resident,  COE 18 at 9:8-9, Mr. Scholten cannot represent a class based on California law.[19]  *See, e.g.*, *Mazza*, 666 F.3d at 594 (each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place).  Mr. Scholten's claims are also not typical of the proposed class because he knew about and experienced the ABS issue before purchasing a second 2010 Prius.  COE 18 at 58:2-14; 60:21-61:14; 129:13-130:7.  That Mr. Scholten purchased another 2010 Prius despite knowledge of the ABS issue (even after claiming it caused his accident) makes him ill-suited to claim that disclosure of the ABS issue would have been "material" to his purchase decision.  In addition, Mr. Scholten's claims are not typical of the proposed class because his claimed damages are not only based upon an alleged and unsubstantiated diminution in value of his vehicle, but also upon the "out-of-pocket-loss" he allegedly sustained from his accident, which includes his insurance deductible and the $2,000 he paid pursuant to an undocumented agreement he negotiated with his dealer.  *Id*. at 108:23-109:9.  Of course the circumstances of his particular accident and whether it was caused by the ABS issue or his own negligence are not typical of anyone else.

Ms. Kramer's claims are also not typical because she does not have a viable CLRA claim.  This is because she does not use her Prius primarily for "*personal, family, or household purposes,*" as required for a CLRA claim.   Cal. Civ. Code § 1761(d) (emphasis added).  Ms. Kramer admitted that she uses her vehicle for *business* purposes and that she claims a full tax deduction for her vehicle and related

---

[19] Plaintiffs allege—for the first time in their moving brief—breach of implied warranty, breach of contract and breach of express warranty claims under Texas law.  Mov. Br. at 3 at n.3.  A certification motion is not the proper forum to introduce new claims because "it is [Plaintiffs'] burden not this Court's, to propose a class that merits certification."  *Coughlin v. Sears Holdings Corp.*, No. SACV 08-0015 (CJC) 2010 WL 4403089, at *2 (C.D. Cal. Oct. 26, 2010) (explaining that once plaintiff decided to change the definition of the proposed class, she should have sought leave to file an amended complaint that "contained a precise definition for her new proposed class.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

33

OPPOSITION TO CLASS CERTIFICATION
MOTION

1   expenses for that reason.  COE 24, 25 at Response No. 6.  Because Ms. Kramer is

2   not a "consumer," as defined by the CLRA, she cannot satisfy a key element of a

3   CLRA claim, and thus cannot pursue a CLRA claim.  Cal. Civ. Code § 1761(d); *see*

4   *also Ewert v. eBay, Inc.*, Nos. C-07-02198 (RMW), 2010 WL 4269259 (N.D. Cal.

5   Oct. 25, 2010 ("By failing to show how class members' consumer status can be

6   determined without individualized inquiry, plaintiffs have failed to meet their

7   burden…with respect to their CLRA claim").

8          The only Plaintiff that may be typical of the defined class is Mr. Choi, who

9   testified that although he experienced a "skiddy" or "spongy" feeling a handful of

10  times, he never had a problem stopping his vehicle and thought the "spongy" feeling

11  was just a characteristic of the vehicle.  COE 16 at 97:14-98:11, 99:17-101:5.  In

12  fact, Mr. Choi testified that prior to the recall "[t]here is no problem driving.  The

13  car is perfect.  Only one is the skid.  That – I had the feeling.  Kind of spongy

14  feeling."  *Id*. at 103:24-104:8.  Whenever Mr. Choi experienced this "feeling,"

15  which according to Mr. Choi lasted "way less than a second," *id*. at 100:4-11, he

16  simply pushed harder on the brake pedal and "it was slowing down immediately,"

17  *id*. at 100:4-6, 103:24-104:8, and so "[s]topping – it stop.  It's not a problem."  *Id*. at

18  100:22-23.  According to Mr. Choi, who is an engineer, after the ABS software was

19  updated in his vehicle, it "solved the problem," *id*. at 138:14-21 and "the feeling is

20  looks like it just disappeared."  COE 16 at 122:4-16.  Mr. Choi admits that he never

21  attempted to sell his Prius, and in fact, when asked at his deposition if he wanted to

22  sell his Prius, Mr. Choi answered  "[n]o.  Why? Why sell?," *Id*. at 147:5-18,

23  presumably because as Mr. Choi testified, "Now I'm happy, the brake is working

24  fine."  *Id*. at 149:16-20.

25         Simply put, the complete lack of consistency among just the named Plaintiffs

26  is fatal to Plaintiffs' attempt to certify a class.  *Hanon v. Dataproducts Corp.*, 976

27  F.2d 497, 508 (9th Cir. 1992) (affirming denial of certification because plaintiffs

28  were not typical of the class).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

34

OPPOSITION TO CLASS CERTIFICATION MOTION

1    The four named plaintiffs' experiences also lack typicality for a Lexus HS

2    250h class because none owns a Lexus HS 250h.  COE 20-23.  Plaintiffs admit the

3    ABS of the HS 250h is similar, but not identical, to that of the 2010 Prius.  *See* COE

4    14 at ¶ 8.  Additionally, Plaintiffs provide no evidence or even suggest that the

5    software update failed to remedy the ABS issue in 2010 HS 250h vehicles.

6    Moreover, the marketing campaigns and advertisements for the HS 250h were

7    completely different than the Prius campaign.  COE 3 at ¶¶ 33-34; COE 28 at 45:7-

8    12.  The named Plaintiffs are not typical of the HS 250h class members they seek to

9    represent because Plaintiffs do not and cannot allege they relied upon and were

10   deceived by any HS 250h marketing or advertising.  *See Wiener v. Dannon Co.*, 255

11   F.R.D. 658, 666 (C.D. Cal. 2009) (denying class certification because named

12   plaintiff failed to satisfy typicality requirement where she did not purchase certain

13   products at issue in the case that were purchased by unnamed plaintiffs such that

14   "the claims of the unnamed plaintiffs [were] not 'fairly encompassed by [the

15   plaintiff's] claims.'").

16   Moreover, because Plaintiffs' claims are subject to unique defenses, Plaintiffs

17   cannot satisfy the adequacy of representation requirement for the same reasons that

18   they cannot satisfy the typicality requirement.  S*ee General Telephone Co. of*

19   *Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982).

20   **VI.   A Class Action Is Not the Superior Method for Adjudicating this Dispute**

21   **A.   Plaintiffs Have Offered the Court No Guidance on Manageability**

22   In evaluating superiority, the court must consider the likely difficulties in

23   managing the case, specifically "the whole range of practical problems that may

24   render the class action format inappropriate for a particular suit."  *Eisen v. Carlisle*

25   *and Jaquelin,* 417 U.S. 156 (1974).  Plaintiffs have not provided the Court with any

26   guidance as to how it can deal with the numerous individual issues discussed above

27   and a "court cannot rely merely on assurances of counsel that any problems with

28   predominance or superiority can be overcome."  *Zinser,* 253 F.3d at 1189.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

35

OPPOSITION TO CLASS CERTIFICATION
MOTION

In a case of this size and complexity, the Court cannot adequately assess manageability or superiority without Plaintiffs presenting a proper trial plan that demonstrates how Plaintiffs intend to try each "claim[], issue[], or defense." Fed. R. Civ. P. 23(c)(1)(B); *Zinser*, 253 F.3d at 1189 ("suitable and realistic" trial plan - not simply the assurances of counsel - is required at the class certification stage"); *see also Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (explaining that certification is improper where "[t]here has been no showing by Plaintiffs of how the class trial could be conducted.").  Such a plan must be filed with plaintiffs' motion and courts have refused to consider a plan filed with the reply.  *Sweet v. Pfizer*, 232 F.R.D. 360, 369 (C.D. Cal. 2005) (refusing to consider plan filed with reply).  Plaintiffs have offered no such plan, which is particularly necessary here because Plaintiffs chose to defer to some later date how they will obtain and introduce evidence to meet their burden on a class-wide basis.

Plaintiffs need to demonstrate, among other things, a material safety defect, material representations or omissions related to the ABS issue, causation, injury and damages, not based on assumptions of Plaintiffs' counsel or an expert's speculations, but on admissible evidence that is common to the entire class. Plaintiffs' class motion makes exceedingly clear that no such evidence exists. Indeed, Plaintiffs cannot even explain how they are going to prove that the ABS issue that Toyota acknowledges was a condition in pre-recall vehicles, was actually a material safety defect common to the class.

Plaintiffs appear to presume that they do not need expert testimony, testing or analysis of accidents to prove that the ABS issue was a material safety defect. Instead, Plaintiffs' motion suggests they believe they can simply rely on the existence of the recall or Toyota's purported admission in submissions to NHTSA and its recall notices to prove this element of their claims.  But Rule 407 of the Federal Rules of Evidence prevent Plaintiffs from relying on the recall to establish wrongful conduct, a defect, or a required wrong.  Fed. R. Evid. 407.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

36

OPPOSITION TO CLASS CERTIFICATION
MOTION

Similarly, under California substantive law, "service bulletins" defined as "any notice issued by a manufacturer and filed with the National Highway Traffic Safety Administration relating to vehicle durability, reliability, or performance," Cal. Civ. Code § 1795.90, or notice of service bulletins, cannot be "construed as an admission … of the existence or nonexistence of a vehicle defect." *Id.* § 1795.90-91. Thus, Toyota's NHTSA filings and recall announcement "cannot fairly be construed…as an admission of a design or other defect." *Am. Honda Motor Co., v. Sup. Ct.*, 199 Cal. App. 4th 1367, 1378 (2011).  Indeed, if notice to NHTSA sufficed "to show a product liability case is proper for class action treatment, then there would be a class action every time a [notice to NHTSA] is issued." *Id.*; *see also Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 554-55 (C.D. Cal. 2012) (finding that instructions to dealers and service bulletins "are not conclusive proof that a common defect affects all the vehicles in question")*; Alban v. BMW of N. Am.*, No. 09-5398, 2011 WL 900114 (DRD), at *12 (D. N.J. Mar. 15, 2011) (noting hesitance "to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect," as doing so would "discourage manufacturers from responding to their customers in the first place"); *Erlandson v. Ford Motor Co.*, No. 08-CV-1137, 2009 WL 3672898 (BR), at *4 (D. Or. Oct. 30, 2009) (finding that a TSB does not constitute an admission by defendant that a defect exists in all Windstars).[20]

The purported NHTSA internal report identified by Plaintiffs, and objected to by Toyota, *see* Objection 9, stating that the ABS issue "could be fatal for pedestrians," is not actually a NHTSA document, but a TheDetroitBureau.com blog article, *see* COE 39, that referenced a purported NHTSA internal memorandum that

---

[20] Even though several of these cases address service bulletins, and not recall notices, the public policy reasoning is the same.  Holding that a recall notice to customers and dealers is evidence of an admission of a defect would discourage manufacturers from "responding to their customers in the first place." *Alban,* 2011 WL 900114 at *12.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

37

OPPOSITION TO CLASS CERTIFICATION MOTION

1   has never been produced by Plaintiffs nor confirmed by NHTSA and likely does not

2   exist.[21]  Mov. Br. at 26.

3         Plaintiffs also cannot explain how class membership could be ascertained

4   with any reasonable degree of certainty based on *Mazza*'s clear instructions that "the

5   relevant class must be defined in such a way as to include only members who were

6   exposed to advertising that is alleged to be materially misleading."  666 F.3d at 596.

7   If any misleading advertising exists, such an analysis would require individual

8   investigations into the purchasing habits and decisions of every putative class

9   member because, as Professor Keller opines, no two consumers' car buying

10  experiences are the same, COE 3 at *passim*.

11        Further, Plaintiffs have offered the Court no guidance about how it can

12  determine common proof of harm and damages at trial and Dr. Williams' testimony

13  is of no use because he did not perform any actual analysis.

14        In sum, Plaintiffs have no solution to the countless manageability problems

15  that will arise if this case is certified.

16  **B.      Relief Is Available Through Other Channels**

17        Given the issues presented in this case, a class action is not superior because

18  more targeted and appropriate relief, if any, can be obtained through other methods

19  of adjudication, including NHTSA.  *See e.g.*, *Johnson v. Harley-Davidson Motor*

20  *Co. Grp.*, No. 10-CV-02443 (JAM), 2012 WL 1898938, at *11 (E.D. Cal. May 23,

21  2012) (explaining that a class action was not superior where "[p]laintiffs, or any

22  interested party, can petition NHTSA to investigate the alleged safety issues"); *Chin*

23  *v. Chrysler Corp.,* 182 F.R.D. 448, 464 (D.N.J. 1998) (denying certification and

24  finding that "the administrative remedy provided by NHTSA, including recall of

25  vehicles for inspection and/or repair, is more appropriate than civil litigation seeking

26

27  [21] Publicly available NHTSA documents suggests that no such conclusions were

28  reached; no proceedings were held and the preliminary evaluation was closed two
    months after it was opened without ever being escalated to an investigation.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

38

OPPOSITION TO CLASS CERTIFICATION
MOTION

equitable relief and money damages in federal court"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002) ("Regulation by the NHTSA, coupled with tort litigation by person suffering physical injury, is far superior to a suit by millions of uninjured buyers for dealing with consumer products that are said to be failure-prone.").

Finally, to the extent that a putative class member believes that the software update did not remedy the ABS issue in his or her vehicle, such individual can pursue an individual claim under the California lemon law statute. *See, e.g.*, Cal. Civ. Code § 1793.2(d). California's Song-Beverly Consumer Warranty Act permits a buyer who prevails to "recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees," Cal. Civ. Code § 1794(d), providing more than sufficient incentive to bring an action even if the amount of recovery is relatively small. *See Rowden v. Pac. Parking Sys., Inc.*, No. 11-01190 (CJC), 2012 WL 2552694, at *5-6 (C.D. Cal. July 2, 2012) (finding that where there were two reasonable alternatives to a class action, which provided more than sufficient incentive to bring an action, it was "simply not credible to argue that a class action [was] the 'superior' method"). Certainly the adjudication of such lemon law claims would take far less than the two and a half years this case has been pending.[22]

## CONCLUSION

This case should have been over before it started because Toyota did the right thing by addressing customer satisfaction issues through the recall. Last year, this Court kept the case alive, but sent a clear message to Plaintiffs that they must identify common proof that the recall did not work on a class-wide basis. Plaintiffs failed to support their allegations that the recall did not remedy the ABS issue, and

---

[22] Although Plaintiffs have no right to add Texas claims in its certification brief, Texas also has a lemon law statute, under which a prevailing plaintiff may be entitled to attorney fees. Tex. Occ. Code § 2301.601 *et seq.*; 43 Tex. Admin. Code § 215.201, *et seq.*

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

39

OPPOSITION TO CLASS CERTIFICATION MOTION

1  based on Plaintiffs' failure, and their inability to meet the requirements of Rule 23,

2  Toyota respectfully requests that this Court deny Plaintiffs' Motion for Class

3  Certification.

4

5  Dated:   October 22, 2012                 Respectfully submitted,

6                                            LOEB & LOEB LLP

7

8  By:____/s/ Michael L. Mallow_____
                                               Michael L. Mallow
9                                          Attorneys for Defendants
                                   TOYOTA MOTOR SALES, U.S.A., INC.
10                                 and TOYOTA MOTOR CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2252681.2
212799-10020

40

OPPOSITION TO CLASS CERTIFICATION
MOTION