UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. HYBRID BRAKE MARKETING, SALES PRACTICES and PRODUCTS LIABILITY LITIGATION | Case No.: SAML 10-2172-CJC(RNBx)  <br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## I. INTRODUCTION

Plaintiffs Michael Scholten, Jessica M. Kramer, Alexsandra Del Real, and Michael Choi (collectively, "Plaintiffs") bring this putative class action against Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc. (collectively, "Toyota") on behalf of themselves and others similarly situated who purchased or leased Model Year 2010 Toyota Prius or Model Year 2010 Lexus HS 250h (collectively, the "Class

-1-

Vehicles"). Plaintiffs allege that a defect in the anti-lock brake system (the "ABS") of the Class Vehicles causes the ABS to improperly engage when it is not needed, resulting in increased stopping time and distance. Plaintiffs further allege that Toyota had notice of the defect as early as July 2009 but nevertheless failed to disclose the defect on a timely basis, continued to manufacture and sell the Class Vehicles, and advertised the Class Vehicles as safe and reliable. In February 2010, Toyota voluntarily recalled the Class Vehicles and offered to install a software update to remedy the braking defect. Despite the recall, Plaintiffs claim that the braking defect has not been cured, and they have suffered ensuing monetary and property damage. Plaintiffs now seek to certify a California class, as well as two sub-classes, of individuals who purchased the Class Vehicles. Toyota opposes certification on a number of grounds, in particular, arguing that Plaintiffs cannot show that common questions of law and fact predominate over questions affecting only individual members. The Court agrees with Toyota and, accordingly, DENIES Plaintiffs' motion for class certification.

## II. BACKGROUND

In the fall of 2009, Toyota began to receive a disproportionately high number of customer complaints regarding the Class Vehicles and an inconsistent brake pedal feel during the slow and steady application of the brakes on rough or uneven road surfaces. (*See* Dkt. No. 348 [Ito Decl. ¶ 4].) After investigating the complaints, Toyota determined that the programming of the ABS created a minor reduction in hydraulic pressure after activation that could result in an inconsistent brake pedal feel and increased stopping distance. (*See* Dkt. No. 351 [Walker Decl. ¶¶ 11–12].) On February 8, 2010, Toyota initiated a voluntary safety recall of the Class Vehicles to facilitate a software update to the vehicles' ABS intended to address the inconsistent brake feel experienced by some customers. (Defs.' Compendium of Evidence ("COE") Exh. 8 [Prius Recall Press

Release].)[1]  Specifically, the software update was intended to address the minor reduction of pressurization in hydraulic braking that followed ABS activation, by instead, rapidly increasing the hydraulic pressure after ABS activation.  (Ito Decl. ¶¶ 5, 9.)  According to Toyota, the software update accomplished its intended purpose, and remedied the defect in the ABS of the Class Vehicles.[2]

All of the named Plaintiffs purchased their Toyota vehicles prior to the recall.  On June 12, 2009, Ms. Del Real purchased her 2010 Prius in Ontario, California.  (Dkt. No. 89 [First Consolidated Amended Complaint ("FCAC") ¶ 21].)  Following her purchase, and before the recall, Ms. Del Real never experienced any problem stopping her Prius.  (COE Exh. 17 [Del Real Depo. at 72:21–23].)  On February 20, 2010, Ms. Del Real received the software update to her ABS from Toyota.  (FCAC ¶ 21.)  Following the recall, Ms. Del Real experienced what she described as "slippage," but has not had any difficulty braking.  (Del Real Depo. at 69:13–15; 72:21–23) ("Q: Okay.  Have you ever had trouble stopping your Prius?  A:  No.")

In July of 2009, Mr. Choi purchased a 2010 Toyota Prius.  (FCAC ¶ 22.)  Following the purchase of his Prius, Mr. Choi began to occasionally experience a "skiddy" feeling when he applied his brakes over "bumpy" or "damaged" road surfaces.

---

[1]  As part of its recall notice, Toyota stated that "[t]he ABS, in normal operation, engages and disengages rapidly (many times per second) as the control system senses and reacts to tire slippage.  Some 2010 model-year Prius and 2010 HS 250h owners have reported experiencing inconsistent brake feel during slow and steady application of brakes on rough or slick road surfaces when the ABS is activated in an effort to maintain tire traction."  (COE Exh. 8.)

[2]  Toyota directs the Court to the testimony of Product General Manager, Kenji Ito, who concluded that "the [software update] remedied the ABS issue in the 2010 Prius and HS 250h."  (Ito Decl. ¶ 14.)  Mr. Ito's conclusions are confirmed by the opinion of the engineering expert Toyota retained for this case, James Walker of Carr Engineering, Inc.  Mr. Walker found that the software update "nullifies the mathematical possibility of extended stopping distance that existed in the pre-recall condition," (Walker Decl. ¶ 20), and that "there is no basis to assert that the recall and/or reflash actions taken by Toyota were ineffective in any way."  (COE Exh. 1 [Walker Expert Report, at 8].)

(COE Exh. 16 [Choi Depo. at 97:14–22].) However, despite this "skiddy" feeling, Mr. Choi never encountered any problem stopping his Prius and has never been involved in a brake related accident. (*Id*. at 100:22–23; 101:6–12.) After the announcement of Toyota's national recall, Mr. Choi received the software update to his Prius' ABS, (*id*. at 122:4–8, 13–16), which, according to Mr. Choi, "solved" the skiddy feeling he experienced prior to the recall, (*id*. at 138:21). Mr. Choi confirmed that after receiving the software update the "[ABS issue] looks like it disappeared," (*id*. at 122:7–8), that the post-recall feeling in his brakes is "way better," (*id*. at 122:13–16), and that he is now "happy" because "the brake [sic] is working fine," (*id*. at 149:19–20).[3]

Ms. Kramer purchased her 2010 Prius on October 23, 2009, in Hollywood, California. (FCAC ¶ 19.) Following the recall, Ms. Kramer received the software update to her Prius' ABS. (*Id*.) Since receiving the software update, Ms. Kramer has continued to experience an inconsistent brake feel in her Prius when driving over potholes or uneven ground. (Nash Decl. Exh. UU [Kramer Depo. at 105:11–17].)

On October 23, 2009, Michael Scholten, a Texas resident, purchased a 2010 Prius in Richardson, Texas. (COE Exh. 18 [Scholten Depo. at 9:8–9; 15:5–6].) Shortly after his purchase, Mr. Scholten was involved in a car accident that he attributes to his Prius' inability to adequately brake. (Scholten Depo. at 70:15–73:13.) Following his accident, Mr. Scholten traded in his Prius for another 2010 Prius. (FCAC ¶ 18.) Shortly thereafter, Mr. Scholten received the software update to his Prius' ABS. (*Id*.) After receiving the software update, Mr. Scholten continued to experience "some odd feelings," describing

---

[3] Despite expressing overall satisfaction with his Prius after receiving the software update, Mr. Choi did apparently experience the skiddy feeling on one subsequent occasion. (Choi Depo. at 147:5–12) ("Q: Mr. Choi, since the recall, do you have any complaints with your vehicle — since the recall, repair, do you have any complaints with your vehicle? A: Probably I had within three weeks. Kind of maybe I had the feeling after some skid feeling, but after that, it disappear [sic]. I didn't have any problem. So far everything looks ok.")

his brakes as "unpredictable, in my mind, or from my experience." (Scholten Depo. at 122:1–6; 122:25–123:1.)

Following the announcement of Toyota's recall, Plaintiffs individually filed class complaints against Toyota that were ultimately consolidated into the FCAC. The FCAC asserts five causes of action against Toyota under California law[4] for (1) violations of the Consumer Legal Remedies Act ("CLRA"), (2) violations of the Unfair Competition Law ("UCL"), (3) violations of the False Advertising Law ("FAL"), (4) breach of Implied Warranty of Merchantability, and (5) common law breach of contract. Plaintiffs now move to certify a class based on Federal Rule of Civil Procedure 23(b)(3), consisting of individuals who purchased or leased the Class Vehicles in California or Texas prior to February 8, 2010. Toyota opposes certification of any class, contending, among other things, that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3). Toyota is correct.

## III. ANALYSIS

Federal Rule of Civil Procedure 23(a) sets forth four requirements for maintenance of a class action. Under that rule, a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If the threshold requirements of Rule 23(a) are met, then one of the three conditions of Rule 23(b) also must be established. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

---

[4] For the first time in their motion for class certification, Plaintiffs seek to include three new causes of action under Texas law. (Pls.' Mot. at 2–3.) A motion for class certification is not the appropriate mechanism to introduce new claims. *See Coughlin v. Sears Holding Corp.*, No. CV 08-00015, 2010 WL 4403089, at *2 (C.D. Cal. Oct. 26, 2010).

Plaintiffs seek certification here under Rule 23(b)(3), contending that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Common questions predominate if the critical issues involved in the case are subject to generalized or common proof, as opposed to an individualized inquiry. *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 364 (N.D. Cal. 2010) ("To determine whether the predominance requirement is satisfied, courts must identify the issues involved in the case and determine which are subject to generalized proof, and which must be the subject of individualized proof.") (internal quotations omitted); *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) ("In order for common questions of law or fact to predominate over individualized questions, the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.") (internal quotations omitted). The efficiency, fairness, and superiority of a class action are lost if the material issues of law and fact must be resolved on an individual basis. *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.")

Although there are serious questions as to whether Plaintiffs can satisfy the commonality, typicality, and adequacy requirements of Rule 23(a), the Court need not address those questions because Plaintiffs clearly cannot satisfy the predominance requirement of Rule 23(b)(3). It is beyond dispute that the critical issue involved in this case is whether there is a manifest defect in the ABS that caused an actual injury to each member of the proposed class. Unless Plaintiffs can demonstrate such a manifest defect resulting in actual injury, they cannot succeed on any of their five product liability claims

alleged in the FCAC.[5]  The resolution of this crucial issue, however, cannot be accomplished through common or generalized proof as is required to maintain a class action.  It must be done by an individualized and particularized inquiry for each member of the proposed class.

Most problematic for Plaintiffs is that they seek to certify a class in which the substantial majority of class members never suffered an actual injury that was caused by a manifest defect in the ABS.  Toyota presented substantial evidence that the updated software installed in the Class Vehicles as part of the national recall rectified any actual or perceived problem with the braking performance of the ABS.  Plaintiffs presented no evidence to contradict Toyota's evidence in this regard.[6]  Indeed, Plaintiffs did not even

---

[5]  Specifically, "Cal. Civ. Code § 1780(a) allows an action to be brought by a consumer 'who suffers any damage' as a result of acts in violation of the CLRA." *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1146 (N.D. Cal. 2005) (quoting Cal. Civ. Code § 1780(a)(1)).  To plead a violation of California's UCL, "the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009); *see* Cal. Bus. & Prof. Code § 17204.  A violation of California's FAL is limited to those "individuals who suffer losses . . . that are eligible for restitution." *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (quoting *Buckland v. Threshold Enters.*, Ltd., 155 Cal. App. 4th 798, 817 (2007)).  To state a claim for breach of the implied warranty of merchantability a plaintiff must allege injury.  *See Birdsong*, 590 F.3d at 959 (affirming district court's dismissal of warranty claim as plaintiffs failed to allege that they have suffered or are substantially certain to suffer injury); *Briehl v. General Motors Corp.*, 172 F.3d 623, 628 ("Since Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed Plaintiffs' Original Complaint.").  Finally, "under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Ruiz v. Gap, Inc.*, 380 Fed. Appx. 689, 692 (9th Cir. 2010) (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)).

[6]  Plaintiffs argue that the complaints post-recall of customers reporting a skiddy or slippage sensation when applying the brakes are evidence of a lingering defect in the ABS.  (*See* Nash Decl. Exhs. L, S.)  Plaintiffs also highlight the deposition testimony of Gary Smith, Toyota's corporate manger of quality assurance and technical support.  Specifically, when asked whether Toyota customers continue to "feel the brake issue" following the recall, Mr. Smith responded:  "Pretty much what I said before.  The characteristic that some people became hypersensitized to, I think there may have been, you know, some — some — a very, very few customers who thought this this issue would go away completely, this sensation would go away completely, when we campaigned the vehicles, and sensation is significantly improved, but it's not — it's not completely gone and so the operation characteristic of the vehicle today is different that it was before and it — it is the way these complex ABS systems work." (Nash Decl.

retain an expert to render an opinion on the safety and performance of the ABS post-recall.  Plaintiffs instead argue that they suffered an actual injury because they would not have paid that same purchase price for each of their vehicles had they known of the problem with the ABS.  (Pls.' Mot. at 1.)  Plaintiffs' benefit-of-the-bargain argument, however, is insufficient as a matter of law.  Merely offering a creative damages theory does not establish the actual injury that is required to prevail on their product liability claims.  And in this case, Ms. Kramer, Ms. Del Real, Mr. Choi, and presumably the majority of the purported class they seek to represent, received exactly what they paid for — that is a vehicle with a safe and operable ABS.  After the updated software was installed in their vehicles, Ms. Kramer, Ms. Del Real, and Mr. Choi had no problem with the braking performance of their vehicles.  They were able to apply their brakes and stop their vehicles without incident.  They never sold their vehicles.  They never incurred any expense as a result of any problem with the ABS in their vehicles.  Simply stated, Ms. Kramer, Ms. Del Real, Mr. Choi, and presumably the majority of the class members they seek to represent, suffered no actual injury, let alone a common one resulting from the same manifest defect.

Moreover, as to the few members of the purported class like Mr. Scholten who claim to have suffered an actual injury or incurred damages because of a problem with the ABS in their vehicles, their injury or damages may have been caused by a variety of factors — some of which, such as human driver error, would not result in liability for Toyota under any theory — and the determination of the actual cause of the injury or

---

Exh. WW [Smith Depo. 175: 12–25].)  Whether Toyota continued to receive customer complaints of a skiddy or slippage sensation following the recall, or whether Toyota acknowledged that some customers may continue to experience such a brake "sensation," does not establish any problem with the braking performance of the ABS and a manifest defect that has caused Plaintiffs to suffer injuries.  *See Birdsong*, 590 F.3d at 961 ("To the contrary, the plaintiffs' third amended complaint reveals the conjectural and hypothetical nature of the alleged injury as the plaintiffs merely assert that some iPods have the 'capability' of producing unsafe levels of sound and that consumers 'may' listen to their iPods at unsafe levels combined with an 'ability' to listen for long periods of time.")

damages would require highly individualized, fact-intensive inquiries. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189, amended by 273 F.3d 1266 (9th Cir. 2001) (when individual issues predominate, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified") (internal quotations omitted); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603–04 (S.D.N.Y. 1982) (finding that when "class members whose tires had performed as warranted would have to be identified and eliminated from the action," the action "necessarily metastasizes into millions of individual claims").[7] Especially since the number of members of Plaintiffs' proposed class that allegedly suffered an injury is tiny, Plaintiffs' proposal to certify a class of thousands of owners of the Class Vehicles, then determine which few suffered an actual injury that resulted from a manifest defect in the ABS, "would render the class action device nothing more than a façade for conducting a small number of highly individualized," fact-intensive cases. *In re Cannon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006). Such a class action is certainly not a superior, fair, and efficient method for resolving the parties' controversy. *Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'").

///
///
///
///
///

---

[7] How fast the purported class member was driving, what the weather and road conditions were at the time the accident occurred, whether tailgating or comparative negligence was involved, and the maintenance and accident history of the vehicle are just a few of the individualized questions that would have to be answered to determine Toyota's liability for any injury or damages.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED.

DATED: January 9, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE