

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. HYBRID BRAKE MARKETING, SALES PRACTICES and PRODUCTS LIABILITY LITIGATION | Case No.: SAML 10-02172-CJC(RNBx)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MICHAEL CHOI'S CLAIMS |

## I.  INTRODUCTION

On April 26, 2011, Plaintiff Michael Choi, along with Michael Scholten, Jessica M. Kramer, and Alexsandra Del Real (collectively, "Plaintiffs") filed their First Consolidated Amended Complaint ("FCAC"), seeking to represent a nationwide class of purchasers of the 2010 Toyota Prius and Lexus HS 250h hybrid vehicles (the "Class

Vehicles"), against Toyota Motor Corporation and Toyota Motor Sales, U.S.A. (together, "Toyota").  Plaintiffs allege, *inter alia*, that the Class Vehicles contain a defect in the anti-lock braking system ("ABS") that causes the ABS to improperly engage when it is not needed, resulting in increased stopping time and distance, and creating an unreasonable safety risk to consumers.  Toyota now moves for summary judgment as to Plaintiff Michael Choi's claims.  Because Mr. Choi has not shown that he has suffered any legally cognizable injury as a result of the ABS in his vehicle, Toyota's motion is GRANTED.

## II.  BACKGROUND

In July of 2009, Mr. Choi purchased a 2010 Toyota Prius for $25,678.  (Godino Decl. Exh. C [Choi Depo. at 52:18–19]; Mallow Decl. Exh. 15.)  A few months thereafter, in the fall of 2009, Toyota began to receive a disproportionately high number of customer complaints regarding the Class Vehicles and an inconsistent brake pedal feel during the slow and steady application of the brakes on rough or uneven road surfaces. (Mallow Exhs. 7, 12 [Smith Depo. at 166:12–167:6, 112:11–12].)  After investigating the complaints, Toyota determined that the programming of the ABS created a minor reduction in hydraulic pressure after activation that could result in an inconsistent brake pedal feel and increased stopping distance.  (Rappaport Decl. Exh. 20 [Walker Decl. ¶¶ 11–12].)  On February 8, 2010, Toyota initiated a voluntary safety recall of the Class Vehicles to facilitate a software update to the vehicles' ABS intended to address the inconsistent brake feel experienced by some customers.  (Mallow Decl. Exh. 7.)[1] Specifically, the software update was intended to address the minor reduction of

---

[1]  As part of its recall notice, Toyota stated that "[t]he ABS, in normal operation, engages and disengages rapidly (many times per second) as the control system senses and reacts to tire slippage. Some 2010 model-year Prius and 2010 HS 250h owners have reported experiencing inconsistent brake feel during slow and steady application of brakes on rough or slick road surfaces when the ABS is activated in an effort to maintain tire traction."  (Mallow Decl. Exh. 7.)

pressurization in hydraulic braking that followed ABS activation, by instead, rapidly increasing the hydraulic pressure after ABS activation.  (Rappaport Decl. Exh. 22 [Ito Decl. ¶ 5, 9].)

Following the purchase of his Prius, Mr. Choi began to occasionally experience a "skiddy" feeling when he applied his brakes over "bumpy" or "damaged" road surfaces. (Mallow Decl. Exh. 4 [Choi Depo. at 97:14–22].)  Despite the "skiddy" feeling, Mr. Choi never encountered any problem stopping his Prius and was never involved in a brake related accident.  (Choi Depo. at 100:22–23; 101:6–12.)  After the announcement of Toyota's national recall, Mr. Choi received the software update to his Prius' ABS, (*id*. at 122:4–8, 13–16), which, according to Mr. Choi, "solved" the skiddy feeling he experienced prior to the recall, (*id*. at 138:21.)   Mr. Choi confirmed that after receiving the software update the "[ABS issue] looks like it disappeared," (*id*. at 122:7–8), that the post-recall feeling in his brakes is "way better," (*id*. at 122:13–16), and that he is now "happy" because "the brake [sic] is working fine," (*id*. at 149:19–20).[2]

On February 8, 2010, Mr. Choi filed a class action complaint against Toyota, and on April 26, 2011, Mr. Choi's class complaint was consolidated with his fellow Plaintiffs' complaints into the FCAC.  The FCAC includes five causes of action against Toyota under California law for violations of the Consumer Legal Remedies Act ("CLRA"), California's Business and Professions Code § 17200 ("UCL"), the False Advertising Law ("FAL"), breach of Implied Warranty of Merchantability, and common law breach of contract.  (*See* FCAC.)  Mr. Choi's claims are premised on assertions that the ABS defect has not been cured by Toyota's recall and software update, and that Mr.

---

[2]  Despite expressing overall satisfaction with his Prius after receiving the software update, Mr. Choi did apparently experience the skiddy feeling on one subsequent occasion.  (Godino Decl. Exh. C [Choi Depo. at 147:5-12]) ("Q: Mr. Choi, since the recall, do you have any complaints with your vehicle – since the recall, repair, do you have any complaints with your vehicle?  A: Probably I had within three weeks.  Kind of maybe I had the feeling after some skid feeling, but after that, it disappear [sic].  I didn't have any problem.  So far everything looks ok.")

Choi has suffered ensuing monetary and property damage.  (*Id*.)   Toyota now moves for summary judgment on the basis that Mr. Choi has not experienced any injury or damage as a result of the alleged defect, and has failed to submit any evidence to support his claim that the defect persists following the recall.

## III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and disclosure materials on file, as well as any affidavits, show that that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp*., 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*. at 249.

Where the non-moving party will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp*., 477 U.S. at 325.  Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the

moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position.  Fed. R. Civ. P. 56(c)(1)(A)–(B).  The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  But the opposing party must show more than the "mere existence of a scintilla of evidence."  *Anderson*, 477 U.S. at 252.  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the" non-moving party.  *Id*.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor.  *Id*.; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(c).

## IV.  ANALYSIS

It is well established in the law that a plaintiff cannot prevail on a claim unless he has been injured or damaged.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (potential risk of hearing loss by users of iPod held insufficient to establish requisite injury); *Briehl v. General Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies."); *Harrison v. Leviton Mfg. Co.*, No. CV 05-0491, 2006 WL 2990524, at

*4 (N.D. Okla. 2006) ("Plaintiff may not represent a putative class if he has not actually suffered the injury for which the class seeks redress.")  In product liability cases like this one, federal courts are particularly vigilant in requiring a showing of actual injury.  *See, e.g., Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.") (internal quotations omitted); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F. Supp. 595, 602 (S.D.N.Y. 1982) ("Liability does not exist in vacuum; there must be a showing of some damage.")  A plaintiff's injury must be concrete and particularized.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[t]he plaintiff still must allege a distinct and palpable injury *to himself*, even if it is an injury shared by a larger class of other possible litigants.") (emphasis added).  It cannot be conjectural or hypothetical.  *Lujan*, 504 U.S. at 583 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("The injury or threat of injury must be both real and immediate, not conjectural, or hypothetical.") (internal quotations omitted).

Mr. Choi's five claims are all premised on the assertion that he suffered an injury as a result of the ABS in his vehicle unreasonably extending the time and distance required to stop the vehicle.[3]  Toyota, however, vehemently disputes that Mr. Choi suffered any injury.  Toyota is adamant that the updated software installed in Mr. Choi's vehicle as part of the national recall rectified and remedied any actual or perceived problem with the braking performance of the ABS.  In support of its position, Toyota

---

[3]  Each of Mr. Choi's five causes of action is premised on him suffering an actual injury.  (*See* FCAC ¶ 101 ("As a result of their violations of the CLRA . . . Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs."); *id*. ¶ 115 ("Plaintiffs have suffered injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices."); *id*. ¶ 123 [FAL] ("Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain."); *id*. ¶ 132 ("As a direct and proximate result of Toyota's breach of warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial."); *id*. ¶ 136 ("As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial . . . .").

offers the testimony of its Project General Manager, Kenji Ito.  According to Mr. Ito, after conducting an extensive investigation into the customer complaints associated with the ABS, Toyota determined that the cause of the inconsistent brake pedal feel was a result of "a minor reduction in pressurization in hydraulic braking following an ABS activation when lightly braking over certain surfaces."  (Rapport Decl. Exh. 22 [Ito Decl. ¶ 5].)  Based on this determination, Toyota developed a software update "that increased hydraulic pressure rapidly after an ABS activation, thereby eliminating the mathematical possibility of extended stopping distance . . . and creat[ing] a more consistent brake feel." (Ito Decl. ¶ 9.)  The software update was then subjected to extensive testing to confirm its efficacy.  (*Id.* ¶ 10.)  Based on this testing, Mr. Ito concludes that "the [software update] remedied the ABS issue in the 2010 Prius and HS 250h."  (*Id.* ¶ 14.)

Toyota also offers the opinion of the engineering expert it retained for this case, James Walker of Carr Engineering, Inc.  Mr. Walker confirmed Mr. Ito's finding that there was no lingering problem with the ABS after Toyota's recall and installation of the software update.  Mr. Walker's analysis is based on his development of a testing matrix used to expose a post-recall 2010 Prius to number of different braking events in an effort to determine the effectiveness of the software update.  (Mallow Decl. Exh. 8 [Walker Expert Report, at 7].)  After testing the Prius under various conditions used to simulate real world stopping scenarios, Mr. Walker concluded that "there is no basis to assert that the recall and/or reflash actions taken by Toyota were ineffective in any way."  (Walker Expert Report, at 8.)  Mr. Walker's opinion as to the success of the software update is also based on his analysis of owner comments and feedback, engineering documents produced by Toyota during its investigation, and his participation in the "Prius Braking Study."  (Rapport Decl. Exh. 20 [Walker Decl. ¶¶ 5, 16–20].)  Mr. Walker's analysis found that "Toyota's [software update] for the 2010 Prius and HS 250h modified the ABS electronic control unit software programming to increase hydraulic pressure in one of the circuits during an ABS event."  (Walker Decl. ¶ 20.)  According to Mr. Walker, the

increase in hydraulic pressure resulting from the software update "nullifies the mathematical possibility of extended stopping distance that existed in the pre-recall condition."  (*Id.*)

Surprisingly, Mr. Choi presents no evidence to contradict the opinions, findings, and conclusions of Mr. Ito and Mr. Walker.[4]  Indeed, Mr. Choi did not even retain an engineering expert to render an opinion on the safety and performance of the ABS.  Nor does Mr. Choi present any evidence that the ABS in his vehicle malfunctioned or failed, that he sold his vehicle at a reduced value or that he incurred any expense as a result of any problem with the ABS.  Simply put, Mr. Choi presents no evidence of any injury that he suffered as a result of any problem with the ABS in his vehicle.  *See Harrison*, 2006 WL 2990524, at *5 ("Courts do not allow consumers to bring claims against manufacturers for products that are perceived to be harmful, but that have not actually cause[d] an identifiable injury.")

---

[4] Plaintiffs argue that the complaints post-recall of customers reporting a skiddy or slippage sensation when applying the brakes are evidence of a lingering defect in the ABS.  (*See, e.g.* Godino Decl. Exhs. K, L, T, U.)  Plaintiffs also highlight the deposition testimony of Gary Smith, Toyota's corporate manger of quality assurance and technical support.  Specifically, when asked whether Toyota customers continue to "feel the brake issue" following the recall, Mr. Smith responded:  "Pretty much what I said before.  The characteristic that some people became hypersensitized to, I think there may have been, you know, some – some – a very, very few customers who thought this this issue would go away completely, this sensation would go away completely, when we campaigned the vehicles, and sensation is significantly improved, but it's not – it's not completely gone and so the operation characteristic of the vehicle today is different that it was before and it – it is the way these complex ABS systems work."  (Godino Decl. Exh. B [Smith Depo. 175: 12–25].)  Whether Toyota continued to receive customer complaints of a skiddy or slippage sensation following the recall, or whether Toyota acknowledged that some customers may continue to experience such a brake "sensation," does not establish any problem with the braking performance of the ABS and a manifest defect that has caused Mr. Choi to suffer an injury.  *See Birdsong*, 590 F.3d at 961 ("To the contrary, the plaintiffs' third amended complaint reveals the conjectural and hypothetical nature of the alleged injury as the plaintiffs merely assert that some iPods have the 'capability' of producing unsafe levels of sound and that consumers 'may' listen to their iPods at unsafe levels combined with an 'ability' to listen for long periods of time.")

Nevertheless, in an apparent effort to survive Toyota's motion for summary judgment, Mr. Choi argues that he suffered an actual injury because he would not have paid the same purchase price for his vehicle had he known of the problem with the ABS prior to Toyota's national recall.  Mr. Choi's benefit-of-the-bargain argument is seriously misguided.  Merely stating a creative damages theory does not establish the actual injury that is required to prevail on his product liability claims.

In *Briehl*, the Eighth Circuit dismissed a multi-district proceeding against General Motors Corp. by plaintiffs who claimed that their cars' brakes would fall completely to the floor during an emergency braking event.  *Briehl*, 172 F.3d at 626.  According to plaintiffs, this "pedal-to-the-floor" phenomenon caused them to release the pedals under a belief of total brake failure.  *Id*.  Plaintiffs did not allege that their cars' ABS was unable to bring the vehicles to a stop, and did not allege that a failure in their cars' ABS was responsible for any car accident, property damage, or personal injury.  *Id*.  Rather, the plaintiffs alleged a benefit-of-the-bargain theory of damages, claiming that because the ABS was defective in their vehicles, the vehicles were worth less than they had originally paid.  *Id*.  On a motion to dismiss, General Motors argued the plaintiffs failed to adequately state a claim for breach of warranty, state consumer protection law, fraudulent concealment, and misrepresentation because they had not suffered any injury.  *Id*.  Affirming the district court's dismissal, the Eighth Circuit held:

> In this case, the Plaintiffs have not alleged that their ABS brakes have malfunctioned or failed. In fact, the Plaintiffs affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure.  The Plaintiffs' ABS brakes have functioned satisfactorily and at no time have the brakes exhibited a defect.  Under each of the theories the Plaintiffs invoke in the Original Complaint, damages constitutes an essential element of the cause of action.  Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.  Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the

District Court was correct when it dismissed the Plaintiffs' Original Complaint.

*Id*. at 628 (internal citations omitted.)

Similarly, in *O'Neil v. Simplicity, Inc.*, the plaintiffs brought a class action following the recall of a crib that included a "drop-side," a feature which allowed one side of the crib to be adjusted to facilitate easier use.  553 F. Supp. 2d 1110, 1111 (D. Minn. 2008).  While the plaintiffs' complaint included eight causes of action, it expressly excluded individuals from the proposed class who suffered any personal injury resulting from use of one of Simplicity's cribs.  *Id*. at 1112.  Instead, the plaintiffs turned to a benefit-of-the-bargain theory of damages, arguing they were damaged in the amount equal to the difference between a defect free crib and one with a defective "drop-side."  *Id*. at 1116.  Rejecting their benefit-of-the-bargain argument, the court noted that plaintiffs "cannot complain that they received less than what they bargained for – that is, they cannot claim they received a crib without a functioning drop side – when their drop side has functioned without incident since it was purchased . . . ."  *Id*. at 1118.  The plaintiffs argued further "that the mere fact that Simplicity has recalled the cribs, based on others encountering problems, necessarily means that their crib has a 'manifest' defect."  *Id*. at 1115.  This theory was also rejected, with the court stating "[i]t is simply not enough for a plaintiff to allege that a product defect suffered by others renders his or her use of that same product unsafe; the plaintiff must instead allege an actual manifestation of the defect that results in some injury in order to state a cognizable claim for breach of warranty, unfair trade practices, or unjust enrichment."  *Id*. at 1115.  The court further noted that merely because the "crib has been recalled, therefore, does not *ipso facto* mean that the crib has a manifest defect sufficient to permit [the plaintiffs] claims to proceed.  *Id*. at 1116.[5]

---

[5]  Several other courts have also rejected similar "no injury" product liability cases.  *See, e.g. Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) (court rejected benefit-of-the-bargain argument for damages in class action filed by uninjured plaintiffs who took medication that was reported to cause liver failure in some patients);  *Harrison*, 2006 WL at *4–7 (dismissing complaint as to

Mr. Choi's benefit-of-the-bargain argument fares no better here.  Mr. Choi cannot complain that he received less than what he paid for – that is a vehicle with a safe and operable ABS.  *In re Cannon Cameras Litig.*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006) ("[A] plaintiff who purchases a [car] that never malfunctions over its ordinary period of use cannot be said to have received less than what he bargained for when he made the purchase.").  After the updated software was installed in his vehicle, Mr. Choi had no problem with the braking performance of his vehicle.  He had no accident.  He was able to apply the brakes and stop his vehicle without incident.  As Mr. Choi so aptly stated: "Now I'm happy, the brake is working fine."  The undisputed evidence before the Court establishes that Mr. Choi received precisely what he bargained for with Toyota. Consequently, he has no claim against the company.

**IV.  CONCLUSION**

For the foregoing reasons, Toyota's motion is GRANTED.

DATED:  January 9, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

allegedly defective electrical receptacles that could cause injury or damage but which failed to do so as to class plaintiffs); *Feinstein*, 535 F. Supp. at 602 (dismissing claim under the Magnuson Moss Warranty Act where an alleged tire defect had not manifested itself in class plaintiffs' vehicles*); Carey v. Select Comfort Corp.*, No. CV 04-15451, 2006 WL 871619, at *2–5 (D. Minn. Jan. 30, 2006) (dismissing plaintiff's claim regarding an allegedly defective bed that trapped moisture and caused mold growth where no mold had grown on the plaintiff's bed).